RANDALL (LANZ v.). See Case No. 8,080.

## Case No. 11,555.

### RANDALL v. PHILLIPS et al.

[3 Mason, 378.] [1]

Circuit Court, D. Rhode Island. June Term, 1824.

TENANCY IN COMMON—JOINT TENANCY—SURVIVING MORTGAGEE—WITNESS—COMPETENCY—ANSWER—VOLUNTARY CONVEYANCE—EVIDENCE.

1. By the statute of Rhode Island of 1798 [Rev. Laws R. I. 1798, p. 269], all deeds, &c., to two or more persons are held to be tenancies in common, unless the words clearly and manifestly show an intention to create a joint tenancy. It was held, that a mortgage to four persons afforded no proof that the parties intended a joint tenancy in the mortgage.

[Cited in brief in Clarke v. Robinson, 16 R. I. 780, 13 Atl. 125.]

[1] [Reported by William P. Mason, Esq.]

2. In equity, where there is a joint tenancy in a mortgage, the surviving mortgagee will be *held* a trustee for the representatives of the deceased co-mortgagee.

[Cited in Burnett v. Pratt. 22 Pick. 558; Bailey's Case, 15 R. I. 60, 1 Atl. 135.]

3. The heirs of a deceased mortgagor are not competent witnesses in a suit in equity by an assignee to redeem, to prove the assignment fraudulent, for that is to establish their own title.

4. If an answer to a bill in equity relies on new facts, by way of discharge or avoidance, or defence, not responsive to the bill, they must be established by independent proofs; the answer is not evidence to support them.

[Cited in Mason v. Crosby, Case No. 9,236; Reid v. McCallister, 49 Fed. 17.]

[Cited in Bellows v. Stone. 18 N. H. 472. Cited in brief in Braxton v. Braxton, 20 D. C. 355; Pratt v. Philbrook, 41 Me. 134.]

5. A voluntary conveyance, or a conveyance in fraud of the law, is not a nullity, but binds parties and privies.

[Cited in Clemens v. Clemens. 28 Wis. 648; Gardner v. Commercial Nat. Bank, 13 R. I. 173; Springer v. Drosch, 32 Ind. 491; Way v. Lyon, 3 Blackf. 78.]

6. Parol evidence is inadmissible to vary or contradict the terms of a written agreement signed by the parties.

Bill in equity. The bill stated that one William West, on the 19th June, 1792, being possessed of certain real estate set forth in the bill, for the consideration of £2150, conveyed the same to Jeremiah Phillips, Job Randall (the father of the plaintiff), Gideon Smith, and Joseph Battey, and their heirs and assigns. On the same day, the grantees executed a defeasance, whereby they agreed, that if West should well and truly indemnify, and save them harmless for all money they should advance, or had advanced for him, and for all cost, trouble, and expense they should be put to in undertaking West's business, by settling an execution against him in favour of Benjamin Talbot, amounting to $1366.12½ cts. and also for undertaking and receiving a number of notes and accounts against certain persons named in the defeasance; that then, and in that case, they, the grantees, should reconvey the same real estate to West and his heirs and assigns. The bill alleged, that this defeasance made the conveyance a mortgage; and that Battey died in 1795, having no claim upon, or against, the mortgaged premises, or interest therein by reason of the conveyance or defeasance. Afterwards, in April, 1808, Gideon Smith released to the plaintiff all his right in the mortgaged premises for $700, and afterwards died. The bill then alleged, that William West, in March, 1801, for the consideration of $1000, sold and assigned the deed of defeasance to Job Randall (the father of the plaintiff), and all his interest therein, and also in the mortgaged premises, and by virtue thereof the said Job Randall became seized of the premises in fee, subject to the mortgage. That afterwards Job Randall, in August, 1819, made his will, and in October 1821 died; and his will was duly proved; and by that will he devised the premises to his four sons, viz. the plaintiff, William, George, and Arthur F. Randall; and afterwards the three brothers for the consideration of $1200 conveyed their shares in the same to the plaintiff. The bill farther alleged, that after the conveyance in 1792 from William West, the said Jeremiah Phillips (one of the defendants) entered into possession of a part of the mortgaged premises, and took the rents and profits thereof, and continued so in possession until the 8th December, 1821; and on that day in consideration of $1500 released to his son David Phillips (one of the defendants) all his interest in the same parcel of the mortgaged premises, in virtue whereof the said David entered into possession thereof. The bill farther alleged, that Jeremiah Phillips never was put to any expense, cost, or trouble, or advanced any money within the meaning of the defeasance; that the said Jeremiah and David, during their respective possessions, as aforesaid, took the rents and profits. and cut down timber, &c. &c. on the premises, greatly exceeding the claims or demands due to the said Jeremiah. &c. &c. and then proceeded to pray for an account against them, an injunction against waste, and a redemption and release of the mortgaged estate from the defendants, and for general relief.

The answer of the defendant Jeremiah Phillips admitted the conveyance and defeasance in 1792, and alleged, that before that time William West was indebted in a large sum to him, annexing an account thereof; and that West then agreed, that the mortgaged estate should be held as security for such account, and for all sums of money due to him, with interest, and all sums which should become due for costs, trouble, and expenses, that defendant should be put to in settling a mortgage on the same estate in favour of one Jenks. and for settling the attachment in favour of Talbot, and other concerns of West. The answer then stated, that by the conveyance of 1792, the grantees became joint tenants; it admitted, that Battey died, and that the other grantees became seized as survivors; that previous to the death of Battey, Job Randall (the father) agreed with the other grantees, to hold and settle for their joint benefit all the accounts, &c. stated in the defeasance, and act as their agent in all things touching the same, and the estate so conveyed; that before Battey's death, Talbot's attachment, amounting to £409. 10s. 6d. was by the grantees equally paid off and discharged, and the defendant paid one fourth part, and Job Randall (the father) took a receipt for the whole. That after Battey's death the other grantees filed a bill in equity in the supreme court of Rhode Island against Z. Allen and others to redeem Jenks' mortgage, and in that suit a decree was had for redemption on paying $2508.75, of which the defendant paid $917 and the said Gideon $283, and the residue was paid by Randall,

as agent for all the three grantees, and he took a receipt for the same, as agent. That afterwards, on a rehearing, a deduction was obtained from the amount of the decree, and the defendant attended personally to the cause, &c. That after the redemption, the three surviving grantees took possession of the estate, as surviving joint tenants, and that Randall took the rents and profits thereof, as agent for the grantees, until his death, and ought to account therefor. The answer farther stated, that in July, 1800, the other grantees conveyed to Battey 200 acres of the land for $6000, which Randall received as agent, and has never accounted for the same; that in 1805, they conveyed to N. Thomas 36 acres of the land for $733, which was received by Randall as agent, and never accounted for; that afterwards, W. West requested the defendant to purchase the interest of the said Gideon Smith under the conveyance in 1792, and the defendant consented to purchase the same jointly with Randall, and accordingly the defendant and Randall jointly agreed for the purchase with Gideon Smith, as joint tenants, for $700 to be paid out of their joint funds in Randall's hands, and that the deed should be executed jointly to them. But Randall fraudulently procured the deed in his own name from Gideon Smith, and paid the consideration money out of the joint funds; and thereby, by law, a trust in the same resulted to the defendant for his portion; that afterwards Gideon Smith died, and afterwards Randall died; and thereby the whole interest in the estate survived to the defendant, as surviving joint tenant. The answer farther expressly denied the plaintiff's right to redeem by virtue of the assignment of William West, or otherwise, denying that such assignment was ever executed as pretended in the bill; that during the pendency of the bill to redeem Randall represented to the defendants, that W. West's testimony might be necessary in the suit, and it was agreed, that West should, without any consideration, execute a release of the defeasance &c. to the defendant and Randall jointly, to qualify himself as a witness; that Randall informed the defendant, and the release was so executed accordingly; and that until within a few years he always understood both from West and Randall, that there was other assignment; and the defendant did not know, whether any assignment was in fact ever executed; that the defendant did not believe any such assignment, as now pretended, was executed; it was not put on record until eight years after its pretended date; and that after 1809 Randall continued to treat the estate as their joint estate, as before. The answer then proceeded to state the claims of the defendants, and annexed an account thereof, and averred a refusal by Randall in his lifetime to come to a settlement. It admitted the sale to the other defendant, David Phillips, as alleged in the bill, and concluded with a prayer for dismissal.

The defendant, David Phillips, relied on the answer of the other defendant, admitted the conveyance to himself, and denied the execution of the assignment of William West in 1801, concluding with a prayer for a dismissal. [See West v. Randall, Case No. 17,-424.]

The cause came on to be heard upon the bill, answers and evidence, the cause being at issue on the general replication.

Mr. Searle, for plaintiff.

Tristam Burges and Mr. Tillinghast, for defendants.

STORY, Circuit Justice. So far as the answers in this cause set up new facts by way of discharge or avoidance of the matter of the bill, or allege separate and independent agreements, they are not evidence for the defendants; but all such allegations must be substantiated by proof aliunde. This is the general doctrine in equity, and is not now susceptible of any real doubt. Parteriche v. Powlet, 2 Atk. 383; Brace v. Taylor, Id. 253; Ridgeway v. Darwin, 7 Ves. 405; Thompson v. Lambe, Id. 587; Kirkpatrick v. Love, 2 Amb. 589; Blount v. Burrow, 1 Ves. Jr. 546; Robinson v. Scotney, 19 Ves. 583; Hart v. Ten Eyck, 2 Johns. Ch. 62. There is also an allegation in the answer of the defendant, Jeremiah Phillips, of an independent oral agreement previous to, or at the time of the execution of the conveyance and defeasance in 1792, that he should hold the estate as security for the payment of an account due him, &c. beyond the terms of the agreement in the defeasance. As to this point it is sufficient to say, that no parol evidence can be admitted to vary or contradict the terms of that agreement; and therefore the case must stand upon those terms, and the rights of Phillips be judged of accordingly.

One of the questions, which meets the court in the threshold of this cause, is, whether the conveyance of 1792 is a conveyance in joint tenancy, or in common. The answers set it up as a conveyance in joint tenancy. And so, certainly, it would be construed at the common law. But a statute of Rhode Island has broken in upon the doctrine of the common law. In the digest of 1798 (page 272, § 8), it is provided, "that all gifts, grants, feoffments, devises, and other conveyances of any lands, &c. which have been, or shall be made to two or more persons, whether for years, for life, in tail, or in fee, shall be taken &c. to be estates in common, and not in joint tenancy, unless it is, or shall be therein expressly said, that the grantees &c. shall have or hold the same lands &c. as joint tenants, or in joint tenancy, or to them and the survivor or survivors of them, or unless other words be therein used, clearly and manifestly showing it to be the intention of the parties to such gifts, grants, &c. that such lands &c.

should vest, or be holden as joint estates, and not as estates in common." There is a similar act in Massachusetts; and it has been there decided upon the construction of that act, that mortgages to two or more persons in fee are excepted by implication, and are to be construed as joint tenancies. The first case, in which this doctrine was asserted, is Appleton v. Boyd, 7 Mass. 131. Chief Justice Parsons there said, "The conveyance before us is a mortgage to two persons to secure the payment of a debt jointly due to the mortgagees. As upon the death of either mortgagee, the remedy to recover the debt would survive, we are of opinion, that it was the intent of the parties, that the mortgage or collateral security should comport with that remedy; and for this purpose, that the mortgaged estate should survive. Upon any other construction, but one moiety of the mortgaged tenements would remain a collateral security for the joint debt, which would be clearly repugnant to the intention of the parties to the mortgage." If the consequence here stated were true in point of law, there would certainly be good reason for creating, by implication, such an exception. But with great deference to the learned judge, the doctrine, that a conveyance in mortgage to two persons, as tenants in common, becomes by the death of either no security, except for a moiety, cannot, in my judgment, be maintained in point of law. No authority is cited for it, and it seems to me irreconcilable with established principles. It cannot be deduced from the fact, that the debt vests by survivorship in one party, while the estate would pass to another. For at the common law upon the death of the mortgagee the estate in the land vests in the heir, while the debt vests in the administrator. Com. Dig. "Chancery," 4 A, 9; Bac. Abr. "Mortgage," D, 2; Petty v. Styward, 1 Ch. R. 31, *p. 57, 1 Eq. Cas. Abr. 290; 2 Pow. Mortg. 699. Upon the like argument, it ought to follow in such case, that by the death of the mortgagee the whole security in the land should be gone; and yet it is well established, that the heir takes the land by descent, subject to redemption; and that the debt belongs to the administrator. If a conveyance were made to two mortgagees in fee, expressly as tenants in common, as security for a joint debt, they would so hold it by the common law; and upon the death of either, his share would descend to his heir; as tenant in common, and the survivor would hold the other moiety, as tenant in common, at the same time that the debt would vest solely in him by survivorship, for the purposes of the remedy. Suppose a sole mortgagee dies, leaving daughters, who are his heirs; they take the estate in equal shares as parceners, and not as joint tenants, and yet the right to the debt belongs to neither, but belongs to the administrator. The remedy, then, for the debt, being in one

person, while the right to the estate is another, furnishes no just ground for the distinction contended for. The estate is still a security for the debt, into whosoever hands it passes. Even in Massachusetts, it has been held, that an estate in two mortgagees, though joint before, is not so after, foreclosure; but in the latter case, it becomes a tenancy in common. However that may be, when both mortgagees are living at the foreclosure, there is some difficulty in coming to the same result, if the foreclosure be by the survivor; for that would be to turn the estate from a trust into a use by the mere act of foreclosure. Indeed, in England, an inference in case of mortgages is commonly deduced in favour of tenancies in common, rather than the reverse, at least to the extent of holding the debt not subject in equity to survivorship. See 2 Pow. Mortg. p. 699, c. 15; Bac. Abr. "Mortgage," D, 2; Partridge v. Pawlet, 1 Atk. 467. 2 Atk. 55; Lake v. Craddock, 3 P. Wms. 158. Thus in Rigden v. Vallier, 2 Ves. Sr. 258, 3 Atk. 731, Lord Hardwicke said, "This court has taken a latitude in construing a tenancy in common, without the words, 'equity to be divided,' on the foot of the intent; and therefore determined, that if two men jointly and equally advance a sum of money on mortgage, suppose in fee, and take a security, and take that security to them and their heirs without any words, 'equally to be divided between them,' there shall be survivorship; and so, if they were to foreclose the estate, the estate should be divided between them, because their intent is presumed to be so." So that his lordship held the fact of its being a mortgage repelled in England the notion of its being a joint tenancy. A fortiori, one should suppose, it ought to be repelled under the statute of Rhode Island. Sitting in Massachusetts, I should feel myself bound by the construction given by the local courts to their own statute; but sitting in another state, I am at liberty to adopt such a construction, only so far as it is built upon satisfactory reasoning. I cannot say, that the case of a mortgage "clearly and manifestly" shows the conveyance to be intended to be a joint tenancy. The inconveniences of such a construction in case of a foreclosure after survivorship appear to me not inconsiderable; and I can perceive no ground of convenience, as to the remedy, sufficient to justify an inference of the intent of the parties to create a joint tenancy. On the contrary, my judgment follows that of Lord Hardwicke, in construing the intention to be to create a tenancy in common. The defendant, Jeremiah Phillips, was not then, in virtue of his survivorship, entitled to the whole estate. He was but a tenant in common with the other grantees, and ultimately only with Job Randall, the father, whose title the plaintiff possesses. But if the law were otherwise, it would not, in the eye of a court of equity, materially change

the posture of the present case. It is clear, that the mortgage was intended to secure the advances made by each of the grantees; and though the title to the estate might, in a case of joint tenancy. survive at law, it would in equity be held as a trust for the benefit of the representatives of the deceased mortgagees to the extent of their interests in the debt, secured by the mortgage. The case of Petty v. Styward, 1 Ch. R. 57, 1 Eq. Cas. Abr. 290, is directly in point, if, indeed, the inference would not be irresistible from the nature of such a transaction. See, also, 2 Pow. Mortg. 699. This point, indeed, is of itself of minor consequence in the cause, for if the plaintiff is the exclusive assignee of the equity of redemption, he is entitled to maintain his bill to redeem, and the defendants are entitled to nothing more than the balance of their debt, if any is now due to them.

The more important point is, whether the assignment by William West, set up in the bill. is good and valid in point of law. First, it is said, that it was a mere voluntary conveyance without any consideration to support it. If it were so. still it is not perceived. how it would help the defendants. A voluntary conveyance is sufficient to pass an equity of redemption, so as to entitle the assignee to redeem. It is of no consequence to the mortgagee how the party obtained his title, or what is the consideration for it, if, as to him, it is a legal assignment. If his debt is paid, any farther inquiry is wholly immaterial to his interests. But the assignment itself purports to be for the valuable consideration of $1000, the receipt whereof is in the deed itself acknowledged by the assignor. The assignor could not be permitted to aver against the very terms of his deed, that he never received any consideration, if he were now attempting to controvert it; and, a fortiori, it does not lie in the mouth of a stranger to make that objection, whatever might be the right of creditors. Then again it is said, that the assignment was fraudulent and void, because it was intended merely to make the assignor a witness by a pretended sale in fraud of the parties claiming Jenks's mortgage. Assuming the fact to be, as it is contended, still such a deed, made for such a purpose, is not a mere nullity. It is good as between the parties, and binds them and their privies. It may be avoided by any third persons, whose interests are intended to be defeated by it; but it is not absolutely void. The general doctrine is, that a conveyance in fraud of the law binds parties and privies. and cannot be acted upon, so far as respects them, as a nullity. There is nothing in the present case to extract it from the operation of this principle. But how is the assignment proved to be in fact fraudulent? Independently of the testimony of the heirs of William West, there is nothing in the cause, from which such a conclusion can be justly deduced. Their testimony has been objected to, upon the ground of its incompetency on account of their interest. The objection appears to me well founded. They are directly interested in the matter in issue. If the assignment be set aside, as void, their title to the equity of redemption, as heirs, is completely established. So that, in effect, they are now to testify directly to their own interest and title. Under such circumstances I think their testimony inadmissible. At law it has been held, that a party, claiming a right to the thing in controversy, is an incompetent witness to establish that right. See Buckland v. Tankard, 5 Term R. 578. Whether this rule be universally correct, it is not necessary to inquire; but if, as in the present case, the testimony establishes the right of the witness, as an heir, it appears to me, that he has a direct interest in the event by defeating the plaintiff. It has been stated, in a late work on Evidence, that a devisee is not a competent witness in a suit by another devisee against the heir to establish the sanity of the testator. 1 Phil. Ev. p. 50, c. 5, § 1. That is precisely like the present case, in principle. If the plaintiff should not succeed in the present suit, his equity of redemption will be entirely defeated. The heirs of William West will thereby indirectly obtain a power to sell and release it; and thus by their own testimony vest in themselves a valuable interest. Nor, as at present advised, do I perceive, in such an event, what remedy the plaintiff could have against them; at least, it would be attended with serious difficulties and embarrassments.

Another objection is, that the assignment is not sufficient to carry the legal estate in Rhode Island, the execution not being attested by any witness. This objection was taken in West v. Randall [Case No. 17,424], and overruled by the court. It is unnecessary to add any thing to the reasoning there stated on this point, as, upon farther reflection, it has my entire assent. And if the law were otherwise, the answer given to the objection in that case would be decisive here, that the assignment is a sufficient contract to assign the defeasance, and to create a right to compel a legal conveyance of the estate. Under such circumstances, the defendants would be in no jeopardy by receiving payment of the debt due on the mortgage. and surrendering the estate to the equitable owner, leaving him and the heirs to contest their ulterior rights.

My opinion on the facts is, that the execution of the assignment is sufficiently proved, and that it is of legal validity to pass the whole title to the equity of redemption at law. as well as in equity. (The judge here commented on the facts at large.)

As to the allegations in the answer, that Smith's share was purchased on joint account, and the assignment of the equity, if made at all, was on joint account, for the

benefit of the defendant, Jeremiah Phillips, as well as Job Randall, it is sufficient to say, that they are not supported by the proofs. Being independent statements, not responsive to the charges in the bill, the answers are not evidence to establish them.

Upon the whole, my opinion is, that by the assignment, the plaintiff has a right to redeem the estate in the possession of the defendants on payment of the mortgage money, and I shall so decree accordingly. An account must be taken between the parties before a master; and upon his report the cause will stand for a farther decree. Decree accordingly.