# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1842, AT CAMBRIDGE.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY, } Justices.
Hon. SAMUEL HUBBARD,

---

## Martha D. Ewer vs. Ebenezer Hobbs, Jr., & wife.

A debtor made three mortgage deeds, at the same time, of the same land, to secure payment of different sums, on the same day, to three of his creditors: The deeds were recorded at the same time, and no preference or priority was intended by the parties: The mortgagor subsequently made partial payments, in different proportions, to each of the mortgagees; and after condition broken, he surrendered possession of the land to each of them, on the same day, who entered for foreclosure: One of the mortgagees thereupon filed a petition against the others for partition of the land. *Held,* that although the mortgagees were tenants in common in proportion to the amount of the balance of their several debts, yet that, until foreclosure, their estate in the land was not the subject of partition.

PETITION FOR PARTITION. The parties agreed upon the following facts: On the 24th of October 1831, Samuel G. Derby, being seized of the several parcels of land described in said petition, conveyed the same, by three mortgage deeds, to Martha Derby, now Martha D. Ewer, the petitioner, to Mary Hobbs, wife of said E. Hobbs, jr., and to Joseph O. Derby, to secure payment of three notes made by him on the same day, and each payable in one year, with interest; viz. a note to said Martha for $3400, to said Mary for $905, and to said Joseph

O. for $3400. These deeds were made, delivered and regis-
tered, simultaneously, and no preference or priority of one to
either of the others was intended by the parties thereto. On the
11th of March 1833, said Joseph O. assigned his said note and
mortgage to said E. Hobbs, jr. On the 20th of February 1841,
said Samuel G. Derby delivered possession of the mortgaged
premises to the petitioner, and to said E. Hobbs, jr., in right of
his wife, and as assignee of said Joseph O., for breach of the
conditions of said three mortgage deeds, and for the purpose of
foreclosure. When possession was thus delivered, there was
due on the aforesaid note to the petitioner $3262, on the afore-
said note to Mary Hobbs $1411, and on the aforesaid note to
Joseph O. Derby $5052 — several payments of principal and
interest having been previously made.

The parties agreed that judgment should be rendered for such
partition as the court should order, and that commissioners
should be appointed to make the same.

The argument was had at the last October term.

*H. H. Fuller*, for the petitioner.

*I. Fiske*, for the respondents.

SHAW, C. J. [After stating the facts.] The question ar
gued at the bar is, in what proportions the parties are entitled to
the estate. At the time of the execution of the three mort-
gages, each mortgagee had notice of the two others, which were
made simultaneously and were recorded at the same time ; and
it is not insisted that either has any priority or preference over
the other. Entry to foreclose was made, and possession sur-
rendered to both by the mortgagor, at the same time ; 20th
February. 1841.

The case seems to have been argued on both sides, as if it
were a matter of course, that by law partition can now be made
between these parties ; and the only struggle has been, to deter-
mine the relative proportions in which they shall respectively
take. But the objections, which each party has made to the
proportion proposed by the other, have led us to the considera-
tion of a previous question, whether the parties are now in a
condition to have partition. In order to decide this question, it

becomes necessary to consider what are the relative rights of these parties, as mortgagees, under the general principles of the law of mortgage, as held and administered in this Commonwealth, and the particular situation in which they stand, under the facts presented by the present case.

The first great object of a mortgage is, in the form of a conveyance in fee, to give to the mortgagee an effectual security, by the pledge or hypothecation of real estate, for the payment of a debt, or the performance of some other obligation. The next is, to leave to the mortgagor, and to purchasers, creditors, and all others claiming derivatively through him, the full and entire control, disposition and ownership of the estate, subject only to the first purpose, that of securing the mortgagee. Hence it is, that, as between mortgagor and mortgagee, the mortgage is to be regarded as a conveyance in fee ; because that construction best secures him in his remedy and his ultimate right to the estate, and to its incidents, the rents and profits. But in all other respects, until foreclosure, when the mortgagee becomes the absolute owner, the mortgage is deemed to be a lien or charge, subject to which the estate may be conveyed, attached, and in other respects dealt with, as the estate of the mortgagor. And all the statutes upon the subject are to be so construed ; and all rules of law, whether administered in law, or in equity, are to be so applied, as to carry these objects into effect. In an early case in Massachusetts, it was held by Chief Justice Parsons, that where a mortgage was made to partners, in such form as would ordinarily create a tenancy in common in other grantees — inasmuch as it was designed to secure a joint debt, which, in case of the decease of one partner, would vest in the survivor for the purpose of collection, and subject to the partnership debts — the estate should be held to be a joint tenancy, in order that by the principle of survivorship, applicable to that tenure, the real security might accompany the debt. *Appleton v. Boyd,* 7 Mass. 131. This doctrine was earnestly opposed by Mr. Justice Story, in the case of *Randall* v. *Phillips,* 3 Mason, 378, who insisted that such mortgage, so far as it operated as a transfer of the legal estate, was to be construed a

tenancy in common, and not a joint tenancy. But at the same time he maintained, that on the death of one partner, the heirs of the deceased would take a moiety, charged with an implied trust to hold for the survivor, as security for the debt. And in *Goodwin* v. *Richardson,* 11 Mass. 469, the opinion of the court, given by Mr. Justice Jackson, was, that although a mortgage to partners, to secure a joint debt, might be deemed a joint tenancy, until foreclosure, yet the new absolute estate, vested in the mortgagees by foreclosure, was to be considered as a tenancy in common. It seems, therefore, that whatever difference of opinion there may seem to be, among our eminent jurists, on this subject, is a difference as to the technical mode of the operation of the conveyance ; but they all concur in the proposition, that it is to be so construed, as most effectually to form an indissoluble connexion between the estate and the debt, and make the land subject to the debt, in whatever legal form it may pass, or into whose hands soever it may come. In a recent case, in pursuance of the same general object, it was held, that a mortgage to four, to secure several debts, was to be deemed a tenancy in common, and not a joint tenancy. *Burnett* v. *Pratt,* 22 Pick. 556.

But it becomes necessary to consider precisely what the conveyances were, under which these parties respectively claim. It was not a mortgage to the three, either as tenants in common or joint tenants, to secure their several debts of unequal amount. Nor was it a conveyance to each, of an undivided third, or their aliquot part of the estate, to secure to each his proper debt. But it was a mortgage of the entire estate to each, subject only to the incumbrance created by the mortgage made to the other two at the same time. If one should be paid off in full, then, as in the ordinary case of a mortgage subject to a prior incumbrance, the estate would stand charged with the whole of the subsequent mortgages, as if the previous one had not been made. So if it had been paid in part, or if two had been paid off in full, the estate would be bound for the payment of the whole of the remaining mortgages or mortgage. It is manifest, therefore, that it would not accomplish the original intentions of the parties,

to divide this estate into three equal parts, and consider each mortgagee as taking one third ; because, whilst one debt might be wholly paid off by the mortgagor, the others might accumulate by the accruing of interest. If the latter could take one third only, it might be wholly insufficient to secure the increased debt, whilst one third would be wholly discharged, and revert to the mortgagor ; which would be contrary alike to the plain intent and to the legal effect of the mortgage, binding the whole estate for each debt, subject only to the prior incumbrances.

Nor can these proportions become fixed, until the actual foreclosure of the mortgage. Until that time, the mortgagor may redeem ; so that neither of the present parties will hold anything in the estate. Or one may be paid in full, either voluntarily by the mortgagor, or by satisfaction out of other funds, and then the other will hold the whole ; or a part may be paid, and then the proportions will be varied. There seems therefore to be an insuperable objection to making partition, whilst persons hold as mortgagees only, before foreclosure.

To corroborate this view, it seems proper to recur to a class of cases settling a principle, by which the rights of mortgagors and mortgagees, before foreclosure, are regulated. Before foreclosure, the estate is, to most purposes, in the mortgagor ; he may redeem and make it his own, by paying the debt or performing such other condition as it was intended to secure. The entry to foreclose is a mere step in the process towards a legal foreclosure, and the estate does not therefore cease to be a pledge for the security of the debt. An entry to take the rents does not affect the right to redeem. It merely adds to the fund pledged for the security of the debt. Until foreclosure, the interest of the mortgagee, as well after as before entry to take the rents and profits or to foreclose, is rather a right to acquire an estate in the land, than an actual estate. When the foreclosure does take effect, the mortgaged premises become the absolute estate of the mortgagee ; it is thenceforth indefeasible, and pays the debt or debts for which it was mortgaged, in full, if of sufficient value, otherwise *pro tanto*, in the proportion which its actual value bears to the amount of the debt The

*

estate is acquired at that time, although it relates back to the time of giving the mortgage ; as an estate acquired by levy of execution relates back to the time of attachment on mesne process, (if there was one,) to avoid mesne incumbrances. This view was taken of the law, in the case of *Goodwin* v. *Richardson*, 11 Mass. 469, before cited, in which it was held, that although the mortgage to partners, in the first instance, constituted a joint right for the purposes of remedy, yet the estate, afterwards acquired by actual foreclosure, was a tenancy in common. In *Smith* v. *Dyer*, 16 Mass. 18, it was held, that as well after entry as before, but before foreclosure, the mortgage is to be deemed a security for the debt, and not an estate ; that it goes to the executor, and not the heir ; and that the heir cannot maintain a real action on the mortgage. In *Dewey* v. *Van Deusen*, 4 Pick. 19, this was reconsidered and confirmed, in a case where the mortgagee had entered for condition broken.

The same general principle is supported by another class of cases. Before the revised statutes went into operation, the law was well settled, that no real estate, which a testator acquired after the execution of his will, passed by the will. Under this rule, it was held, that real estate, of which the testator had a mortgage at the time of making his will, but which was foreclosed before his death, was acquired by the foreclosure, and not by the anterior deed, and so did not pass by the will. *Ballard* v. *Carter*, 5 Pick. 112. *Fay* v. *Cheney*, 14 Pick. 401. In this last case, it was put distinctly upon the ground, that it is the foreclosure, by which the pledge is changed into an indefeasible estate. The same doctrine is again considered and reaffirmed in the case of *Brigham* v. *Winchester*, 1 Met. 390.

Such being the nature of the right which mortgagees have in mortgaged lands, before foreclosure — a defeasible, redeemable, and fluctuating interest — we are of opinion, that when such right or interest is held by two or more persons, as joint tenants or tenants in common, they do not hold such an estate as can be the subject of partition. Rev. Sts. *c.* 103, § 1, 3, 4. The statute on this subject of partition does not contain any express limitation, but we think it results from the several provisions

taken together, from the obvious purposes of the process of partition, and from the nature of the interest of such mortgagees. In an analogous case, it has long been held, that such mortgagees, though in actual possession, have no interest which can be reached by attachment. And although mortgagees, after entry, are in the receipt of the rents and profits, it is not, strictly speaking, in their own right, but only as factors for the mortgagor, and liable to account for them, in case of redemption.

But without deciding that in no case will a petition for partition lie, between joint tenants or tenants in common holding under a mortgage not foreclosed, we are of opinion that in the present case, the facts of which are peculiar, such petition cannot be maintained. Here the parties hold under two distinct mortgages, each for the whole estate, and each subject to the other; here both entered to foreclose, after condition broken, and with the consent of the mortgagor, at the same time; and, unless redeemed, all will be foreclosed at the same time.

If it be asked, what is to be the condition of the mortgaged premises in the mean time, we think the question is not one of much difficulty. As tenants in common, neither can enter or hold to the exclusion of the other; but the possession of one enures to the benefit of himself and his cotenant. If one take more than his share of the rents and profits, a bill in equity or an action of assumpsit, in nature of an action of account, will lie, to recover the just share. Rev. Sts. c. 118, § 43. The rents and profits are first to be appropriated to the payment of interest accruing whilst the mortgaged premises are so held, and it seems, therefore, would be appropriated to the respective mortgages, in proportion to the interest accruing at the same time on their respective debts; if it exceeds that amount, then to reduce the debts *pro ratâ*.

Perhaps it is hardly necessary to anticipate the question, how the estate is to be divided in case there should be a foreclosure, and some part of the several mortgages should remain unpaid , but it may perhaps be proper to follow out the view laid down, by indicating what would seem to be the result, according to

the principles before stated. If the estate, at the time of fore
closure, is sufficient to pay the balance of all the mortgage
debts then due, the result is obvious ; the debts will be fully
paid, and each tenant in common will have such share in parti-
tion, as his debt then due bears to the aggregate of the mortgage
debts. And this must be ascertained by a just appraisement.
If it is not equal in value to the whole amount of debts then
remaining due, the tenants in common must divide the land in
the proportion that each debt respectively bears to the aggregate
of debts. This results from the great principle of equity, that
where two or more are entitled to payment out of a common
fund insufficient to pay the whole, and neither has any ground
of preference over the other, by priority of contract or other-
wise, each must receive in proportion to his just claim on the
fund.

*Petition dismissed.*