No. 21.—CURTIS LEWIS, plaintiff in error, *vs.* WILLIAM M. LEAK and ROBERT ALLEN, defendants.

[1.] The admission of *ex parte* affidavits is an exception to the general rule, and is allowable only in *waste*, or in cases where irreparable mischief might ensue.

[2.] On motion to dissolve an injunction upon answer, exceptions filed are no objection to the motion, unless they affect the answer in points relating to the grounds of the injunction.

[3.] Where the answer of the defendant is not responsive to the bill, but sets up affirmative allegations in opposition to or in avoidance of the complainant's demand, the answer is of no avail, in respect to such allegations, on a motion to dissolve an injunction; and, if replied to, the defendant in the trial is as much bound to establish the allegations, so made by independent testimony, as the complainant is to sustain his bill.

In Equity, in Pike Superior Court. Motion to dissolve injunction. Decided by Judge STARK, at Chambers, July 5, 1850.

This was a bill in Equity, filed by the plaintiff in error against the defendants, alleging that, at the December Term, 1849, of Pike Inferior Court, Robert Allen obtained a judgment against complainant for the sum of fifteen hundred and sixty three dollars, principal, and the sum of one hundred and twelve dollars and sixty cents, interest to the 3d day of December, 1849 ; that a *fi. fa.* issued upon said judgment, and has been levied upon the property of complainant.

The bill alleged, that the said Robert Allen and Leak, on the 1st day of June, 1840, formed a copartnership for the purpose of doing a mercantile business in the city of Griffin, and buying and selling city lots. The extent of their business was unknown to complainant. The copartnership existed about eighteen months, during which time they purchased lot No. 4, in square 33, in the city of Griffin ; that at the time of the dissolution, the firm was indebted to John Neal the sum of $550, to John W. Dunbar $300, to John W. Brown $1250, and to Charles Day $1325—making an aggregate of $3425 ; that in consequence of the pecuniary embarrassments of Leak, Robert Allen, by Leak's consent, took charge of all the assets of the firm, consisting of notes and accounts, &c. together with the title to the said city lot, No. 4, in square 33, which, by agreement between the said Allen and Leak, was executed to Allen, individually ; that the object of placing the assets of the firm in the hands of Allen was, that he might settle the aforesaid debts of the firm. After which, a settlement was to be had, and each one was to receive his share of the profits arising from the firm business.

The bill alleged, that Allen had received from the assets of the firm, from rents on said city lot, from sales of different parts of the same, and from other sources, the sum of $7416 96 cents ; that in addition thereto, Leak had expended for improvements on said lot, and in money handed to Allen to pay for the same, and in paying off a debt of the firm to Charles Day, in advancements made to Allen in City Hotel stock, and in an order on Hardeman & Hamilton, the farther sum of $5445 29 cents— making the aggregate sum of $12,862 25 cents ; that after pay-

Lewis *vs.* Leak and Allen.

ing off all the debts of the firm, there still remained in the hands of Allen $10,762 25 cents, realized by him out of the assets of the firm.

The bill alleged, that Leak was indebted to complainant in the sum of $1797 56 cents, for which he held his note, dated March 4th, 1850, and due "one day after date"—the said indebtedness having existed long before the rendition of the judgment in favor of Allen against complainant; that Leak was wholly insolvent; that Allen had in his hands belonging to Leak, more than sufficient of effects to pay the claim of complainant against Leak; that Allen, with the consent and by the express direction of Leak, agreed to pay complainant, upon the debt on which his judgment is founded, whatever amount might be found to be due Leak on a settlement between them as to the assets of the firm; upon which promise and agreement of Allen, complainant relied in good faith; that Allen had refused to have a settlement with Leak, and allow complainant whatever might be due the said Leak; that Allen artfully and fraudulently induced complainant not to urge or set up his defence to the action at Law, in which the judgment was obtained, or to a Court of Equity for an injunction to restrain him from proceeding therein, which complainant otherwise would. have done.

The bill alleged, that Allen, having thus obtained his judgment against complainant, now refuses to settle complainant's claim against Leak, or to come to any settlement whatever in relation to the premises.

The bill farther alleged, that the judgment held by Allen against complainant is founded upon a debt which was contracted by the purchase from Allen, by complainant, of a large portion of the said city lot; that Allen had been often requested and instructed by Leak to apply the funds in his hands, (or a sufficiency thereof,) due Leak, to the extinguishment of the claim held by complainant against Leak; that Allen was acting in bad faith in neglecting to comply with his said promises and agreement, and in oppressing complainant by levying upon his property.

The bill prays, that Allen and Leak may be brought to a settlement, and that the debt due complainant, by Leak, may be allowed as a set-off to the judgment of Allen against complainant; also, for an injunction to restrain Allen from proceeding with his judgment against complainant.

Robert Allen, one of the defendants, answered this bill. By his answer, the defendant admitted that a copartnership existed between himself and Leak, in the mercantile business, about the length of time charged in the bill, the existence of the firm debts specified, but that the amount was greatly more than charged in the bill; that he purchased lot No. 4, in square 33, in the city of Griffin, and payed for the same, individually; that at the time of the dissolution of the partnership, the defendant, at the request of Leak, agreed to take, and did take, the said lot and buildings, to manage the same in such way as to make them, if possible, pay the debts due for the purchase of said lot, (and the defendant took the title to the same); also, to pay a debt due to Brown, and one to Dunbar, as charged in the bill. Defendant denied ever assuming the debt to Charles Day, but that the services of Leak and one Josiah Allen, in the ware-house, situated upon said lot, together with the rent of the store-house for the year during which the dissolution took place, extinguished said debt.

The defendant alleged in his answer, that at the time of the dissolution, said property was not worth, nor could not have been sold for an amount sufficient to have paid said debts of the firm; that the firm, at that time, were also indebted to the defendant in the sum of $300, cash advanced to the firm, to Johnson, Jones & Co. $200, and various other amounts not recollected.

The defendant denied taking charge of all the assets of the firm, or ever taking charge of the house and lot, until after the debt to Charles Day was paid, as before stated, and which was for goods purchased from them, which, or the proceeds thereof, were received by Leak and Josiah Allen, who continued business for a short time after the dissolution.

Defendant admitted that he received assets of the firm to the amount of some $400, in notes and accounts, all of which he afterwards returned to Leak, and, without this, that he received

nothing of said assets except one hundred dollars in an order on Hardeman, as charged in the bill, and five hundred and five dollars from Josiah Allen, and the said town property, which said town property defendant took, at the time of the dissolution of the partnership, to pay the debts of the firm, as far as it would go, (except the Charles Day debt, which was to be paid as before stated,) without bringing himself under any obligation to pay Leak anything whatever; that the consideration for said property was the payment of said firm debts, for which this defendant was bound, leaving the matter entirely at the disposal and management of the defendant, and releasing Leak.

The defendant denied that any legal obligation ever rested upon him to pay Leak anything whatever from the proceeds of said town property, after the dissolution; that the property had been solely managed by himself, at great labor, but that from the change in the times, if he could collect his debt from the complainant, he would be able to save himself from pecuniary loss, and realize a small profit. The defendant admitted, that it had always been his intention, upon the eventual consummation of his transactions in reference to the said firm business, to have given as a compliment to the said Leak and Josiah Allen whatever he realized out of said property, after paying himself for his trouble and expense, and believing that there would be a small balance, he did, in March, 1848, compliment Leak with the sum of $325. The defendant alleged that the partnership was formed for the benefit of his son Josiah Allen, and not for his own; that he loaned his name to give them credit, and that he considered the said Josiah Allen to have more claim upon the proceeds of said property than the said Leak.

The defendant stated, that the firm of Leak & Allen subscribed for five shares of City Hotel stock, at $50 per share, and that afterwards, upon settlement, he purchased Leak's share of said stock, and paid him for it $31 25 cents per share.

The defendant alleged, that at the time of the purchase of the property by complainant from him, for which the debt on which the judgment was founded was created, he believed that complainant was indebted to Leak.

Lewis *vs.* Leak and Allen.

The defendant positively denied ever having promised the said complainant to allow him any thing upon the indebtedness of the defendant to Leak, or ever having held out any inducements to complainant, to prevent him from setting up any defence at law, either before or after the commencement of the suit in the Inferior Court, although often solicited by complainant so to do, to which solicitations, defendant always replied, that if anything was left after the payment of the firm debts, it would be very small, and was willing, if he should think proper to compliment Leak, that it might go, not in payment of the judgment debt, but in the way of another note for $250, still held by the defendant against complainant, and which is not in suit, with the approbation of Leak.

The defendant alleged, that he had been served with summons of garnishment, at the instance of David Cooper and others, creditors of Leak, returnable to the next Inferior Court of Pike County.

The defendant also pleaded the Statute of Frauds.

Upon the coming in of Allen's answer, his counsel moved for a dissolution of the injunction, which motion was heard and overruled by Judge *Stark*, at Chambers, April 18th, 1850, and the defendant ordered to answer the following exceptions, filed by complainant's counsel to his first answer :

1st. For that the said Allen hath not, to the best and utmost of his knowledge, remembrance, information and belief, answered and set forth whether the said copartnership between him and the said Leak did not extend to the buying and selling of city lots, as well as doing a mercantile business in the city of Griffin.

2d. For that the said Allen hath not, in manner aforesaid, answered and set forth what was the extent of the said business done by the firm of Leak & Allen.

3d. For that the said Allen hath not answered and set forth, whether the firm of Leak & Allen did not buy lot No. 4, in square 33, in the city of Griffin, during the time they were doing business.

4th. For that the said Allen hath not answered and set forth what was the entire amount of indebtedness of the said firm, or

to whom the said firm were indebted, farther than the bill states; but only says, that said indebtedness was greatly more than charged by complainant in his bill, and omits to say how much more.

5th. For that the said Allen hath not answered and set forth whether he did not, in consequence of the pecuniary embarrassments of the said Leak, take charge of all the assets of said firm, consisting of notes, accounts, and all the other property and effects of said firm, but makes an indefinite and evasive statement about the said assets.

6th. For that the said Allen hath not answered and set forth what was the object of his taking charge of the firm assets, whether it was not to pay off the indebtedness of the firm, and whether Leak, as a partner in the firm, was not entitled to half the profits after the firm debts were paid.

7th. For that the said Allen hath not answered and set forth whether he has not received the sum of $7416 96 cents, from the rents of houses on said city lot, from the sales of defendant's part of said lot, and from other sources, and hath not stated what amount he has received.

8th. For that the said Allen hath not answered and set forth whether the said Leak has not expended the sum of $5445 29 cents, for improvements on said city lot, in money handed him by Leak to pay for the same, and in paying off a debt of said firm to Charles Day, in advancements made to him in City Hotel stock, and in an order on Hardeman & Hamilton.

9th. For that the said Allen hath not answered and set forth the aggregate amount received by him, and expended by the said Leak, as contained in exhibit B to complainant's bill.

10th. For that the said Allen hath not answered and set forth the amount remaining in his hands, after paying the debts of said firm.

11th. For that the said Allen hath not answered and set forth whether the said Leak is not indebted to complainant the sum of $1797 56 cents, and how long said indebtedness has existed.

12th. For that the said Allen hath not answered and set forth

whether the said Leak is not wholly and entirely insolvent, and unable to pay his indebtedness to complainant.

13th. For that the said Allen hath not answered and set forth, directly and fully, whether he did not promise to allow complainant the amount due Leak, in his hands, as a credit on the claim he holds against complainant; but his statement in that respect is neither full nor explicit, but evasive and equivocal, and does not state whether he was not instructed by Leak to pay over his share of the profits of the said firm business to complainant.

14th. For that the said Allen hath not answered and set forth whether the debt enjoined was not founded on the purchase of the said city lot.

To these exceptions, Allen filed the following amended answer:

To the first exception, defendant says, " Said copartnership was formed for the purpose of doing a mercantile business, and did not extend to the speculation in city lots, farther than the purchase of lot No. 4, in square 33, in the city of Griffin, which was purchased by Leak and defendant, to build a store-house upon, from the Monroe Rail Road & Banking Company, for $1000, payable in four equal annual instalments—the first payable on the 8th day of June, 1841. The notes were signed by Leak and defendant, individually. Afterwards, and before the dissolution of the partnership, several lots were sold off of said lot, and to the best of defendant's recollection and belief, the two first notes were paid off by the sale of parts of said original lot—the two last of said notes were paid by this defendant, out of his individual funds—the lot having been purchased by him, individually, from Leak, and all his (Leak's) interest in and to said property, as set forth in the defendant's answer, first made.

To the second exception this defendant answers, that he does not know what was the extent of the business done by the firm of Leak & Allen.

To the third exception, defendant says he has answered in his answer to the first.

Lewis *vs.* Leak and Allen.

To the fourth exception, defendant answers, that the indebtedness of the firm, at the time of dissolution, was as follows: a debt due to Charles Day & Co. amount as stated in the bill; a debt due to John W. Brown, principal, interest and cost to 5th December, 1842, $1675 32 cents; a debt due to John W. Dunbar, $325; a debt due to John Neal, $510, 9th October, 1842; a debt due to Robert Allen, $300; a debt due Johnson, Jones & Peck, between one and two hundred dollars—the precise amount of which defendant does not recollect.

The defendant says, that he has answered the 5th exception in his first answer, as fully as he is now able to do.

To the 6th exception defendant says, that at the time of the dissolution of the partnership, the debts as above stated were due by said firm, and the said Leak was not responsible, and this defendant being bound to pay said debts, he agreed or consented, at the special instance and request of Leak, to pay for and take the title to said lot, individually, and as a consideration for the same, to pay the debts above named, except the debt due Charles Day & Co. which was to be paid by the services of Leak and Josiah Allen, as set forth in defendant's first answer.

To the 7th exception, this defendant submits to the Honorable Court, whether he is bound to admit or deny said charge—the said property being the property of this defendant individually.

To the 8th exception this defendant says, that to the best of his recollection, knowledge and belief, they spent in improvements upon said lot, before the dissolution of said firm, the sum of $600 for store-house, $400 for ware-house, and $50 for making fence around it, which was all the improvements done upon said lot up to the time of dissolution, by said firm, and the debt to Brown was for the money borrowed by said firm to pay for said improvements. This defendant denies that Leak ever turned over to this defendant any thing whatsoever in the way of City Hotel stock, other than is answered to in his first answer. This defendant admits that Leak is insolvent, and does not know whether he is indebted to complainant or not.

To the 13th exception this defendant answers, and denies the

charge in the bill in reference to ever having promised complainant to pay the amount in his hands due Leak, to the note, the foundation of said judgment, and says that he never was informed by complainant or any one else, that complainant ever contemplated setting up any defence to said suit, as charged in said bill.

To the 14th exception he answers, and admits that the note, the foundation of the judgment, was given for the purchase of said city lot.

To the amended answer, counsel for complainant excepted, upon the following grounds:

Because the said Allen has not, in his said amendment, answered to the best and utmost of his knowledge, remembrance, information and belief, in the 3d, 7th, 8th, 9th and 10th exceptions, filed by complainant to his original answer.

A motion to dissolve the injunction was made by counsel for defendant; at the hearing of which, before Judge *Stark*, at Chambers, on the 3d day of July, 1850, counsel for complainant offered *ex parte* affidavits to contradict the answer of the defendant.

After hearing the argument of counsel, the Judge dissolved the injunction, and ordered the *fi. fa.* to proceed, on the following grounds:

1st. Because all the matters on which the complainant's right to an injunction rests, have been fully denied by the answer.

2d. Because, on a motion to dissolve an injunction in a case situated as this is, the Court will not receive and hear affidavits in contradiction to the answer of the answer.

To which decision of Judge *Stark*, counsel for complainant excepted.

MOORE & ALFORD and A. R. MOORE, for plaintiff in error. A list of the points made by plaintiff's counsel, and the authorities to sustain them.

1st. All the effects of an insolvent may be reached by a Court

of Equity, and applied to the payment of his debts. 1 *Page's Rep.* 641.

2d. Courts of Equity should not dissolve an injunction, before the defendant has fully answered the bill and pending exceptions to the answer. *Mitford's P.* §377.

3d. The redress of plaintiff in error was purely equitable. It could not have been successfully set up as a defence to the action at Law of Allen, one of the defendants in error. 1 *Story's Eq.* §§683, 666, 674.

4th. Courts of Equity will relieve against a judgment at Law, at any stage of the proceedings, when the defence could not have been received in a Court of Law. 2 *Story's Eq.* §§885, 886 *and* 887. *Fonb. Eq. top p.* 28. 1 *Mad. Ch.* 131, '2. *Kelly,* 329.

5th. Courts of Equity, on a motion to dissolve an injunction, will hear affidavits in support of the bill, and in contradiction of the answer. 5 *Paige's Rep.* 238.

6th. An injunction should not be dissolved till the defendants have all answered.

C. MURPHY, representing D. A. ALLEN, for defendants. Points submitted and authorities cited—

1. The complainant in this bill, by his own showing, is not entitled to enjoin the judgment against him in favor of the defendant, until there has been a settlement between Leak & Allen, or a refusal by Allen to settle with Leak relative to the co-partnership—the complainant not having established his right against Leak at law. 1 *Hill's C. R.* 336. 2 *J. C. R.* 283. 4 *J. C. R.* 687.

2d. An injunction is dissolved, as a matter of course, if the answer denies all the equities in the bill; affidavits are not admissible to contradict it. 1 *J. C. R.* 444. 2 *Ib.* 204.

3d. Chancery will not relieve against a judgment at Law, unless the defendant was ignorant of the fact in question pending the suit, or it could not be received as a defence at Law. 1 *J. C. R.* 49.

4th. On a motion to dissolve an injunction, exceptions filed are no objections to the motion, unless they affect the answer in points relative to the grounds of the injunction. *Doe vs. Roe,* 1 *Hopk.* 270.

5th. If the defendant, on whom the gravamen rest, has fully answered, the injunction will be dissolved, though there are other defendants who have not answered. 2 *J. C. R.* 148.

6th. The promise alleged in the bill, but denied by the answer, to have been made by Allen to pay the balance due Leak on a settlement, to the complainant, Lewis, if it had been made, was void for want of consideration, and barred by the Statute of Frauds. *Prince's Digest,* 915.

*By the Court.*—LUMPKIN J. delivering the opinion

We do not deem it necessary or proper to notice all the questions made in the argument of this case, or whether or not there was equity in complainant's bill—whether he had not a full, complete and adequate remedy at law—whether, having failed to set up by way of defence to the suit at law, on his note, the matters contained in this bill, he is not foreclosed by the judgment rendered against him in favor of Allen—whether or not Lewis, the complainant, is not compelled to pursue, to every available extent, his remedy at Law against Leak, before he can invoke the aid of Chancery. It is due to candor, however, to state, that had these points been made in the record, we should have found no difficulty in sustaining this proceeding.

But all these matters are waived by the pleadings. The parties have taken issue upon two questions only, namely : *First,* whether, upon a motion to dissolve an injunction in a case like this, it is competent for the complainant to introduce *ex parte* affidavits to support the bill and to contradict the answer ; and *Secondly,* whether the answer of Allen, the defendant enjoined, has denied all the equity in the bill upon which the injunction was granted.

[1.] The general rule is against the admission of affidavits in these cases, and the instances in which they are admitted, are

Lewis *vs.* Leak and Allen.

exceptions, as in waste and analagous cases resting on the same principle where irreparable mischief might ensue. We think the application for their admission was properly denied in the case before us. *Berkely vs. Brymer,* 9 *Vesey,* 355.

[2.] We recognize the doctrine contended for by defendant's counsel, that on a motion to dissolve an injunction upon answer, exceptions filed are no objection to the motion, unless they affect the answer in points relating to the grounds of the injunction. It becomes necessary, therefore, to look into the exceptions, and see whether they apply to the answer in those points upon which the injunction rests. If they so apply, it furnishes an answer to the motion.

[3.] The presiding Judge, before whom the first motion was made to dissolve the injunction, seemed to think that the equity, upon which the injunction was granted, rested on the promise and undertaking, on the part both of Allen and Leak, that the claim of Lewis against Leak should be paid out of the surplus effects in Allen's hands of the firm property, after the settlement of the partnership of Allen & Leak. If this view of the complainants' equity was correct, then the exceptions which were filed to the amended answer were frivolous, and the injunction should have been dissolved—for this allegation is fully met and broadly denied by Allen, so far as he is concerned.

The equity of the complainant consists in this : that the debt which he owes Allen, and which he seeks to have satisfied out of the share of Leak in the surplus in Allen's hands, after the settlement of the partnership, in discharge of Leak's indebtedness to him, was contracted for and on account of the partnership property of Allen & Leak, and that Leak, his debtor, is utterly insolvent, and has no other means of paying this demand, and that he is not only willing but desirous that it should be satisfied out of this fund. *Wright vs. Bell, Daniels' Rep.* 95. *Edmoston vs. Fide,* 1 *Paige,* 641.

This being the case, it is obvious that Lewis is entitled to a full discovery from Allen as to the partnership property in his hands, and the residue to be divided between Leak and himself, after the settlement of the firm. Has he got this? One of the

main items of joint stock property was lot No. 4, in square 33, in the city of Griffin. It was for the purchase of a part of this lot, that Lewis gave the note to Allen, which is the subject matter of this litigation. The bill alleges, that Allen has received between seven and eight thousand dollars as the proceeds of this real estate. Allen, after admitting in his original answer, that he took this property at the dissolution of the firm, and agreed to manage it in such manner as would make it pay the purchase money still due upon it, and other debts of the concern, as far as it would go, refuses to make any disclosures, in his amended answer, as to the proceeds, for the reason that, at the dissolution, he acquired the individual title to the property, and is, consequently, protected from other or farther answer respecting it.

Here it is most obvious, that so far from denying the equity of the bill in this particular, that enough is admitted, except as to the value, &c. to entitle the complainant to a decree. What if he did take an individual title at the dissolution! That will not protect him from accounting for the proceeds, according to his own admissions; for, inasmuch as these proceeds were to be applied to the extinguishment of the firm debts, it would, of course, leave just that much more to be finally divided between the copartners.

Again, the bill charges, that after paying off all the debts of the firm, there still remained in the hands of Allen, to be divided between Leak and himself, $10,762 25, realized by him out of the partnership effects. Now, Lewis is certainly entitled to know what the true balance is—in other words, to a full account of the partnership as settled by Allen—the assets received, and from whom—the amount disbursed, and to whom.

It is true, that Allen seeks to excuse himself from answering more fully touching these matters, upon the ground, that in consideration of the individual appropriation which he made of the real estate, he agreed to pay certain specified debts, and released Leak from farther liability thereon. But this part of his answer is not responsive to the bill, but sets up affirmative allegations in opposition to, or in avoidance of the complainant's demand, and is of no avail in respect to such allegations, either on a motion to

dissolve the injunction, or as testimony on the trial; on the contrary being replied to, the defendant will be just as much bound to establish them by independent proof, as the complainant is to sustain his bill. 4 *Paige*, 23.   8 *Pick.* 113.   2 *Johns. Ch. R.* 89.   15 *Monroe*, 125.   2 *Stewart*, 280.   15 *Vermont*, 93.   3 *Mason*, 378.   2 *Bibb*, 36.   2 *McCord's Ch. R.* 156.   12 *Peters*, 178.   6 *Monroe*, 620.   4 *Hen. & Munf.* 511.   1 *Munf.* 373. 1 *Gill. & Johns.* 272.   10 *Yerg.* 105.   5 *Dana*, 263.   2 *Sumner*, 487.   *Story's Eq. Pl.* §849, *a.*   1 *Ired. Eq.* 332.   *Dev. Eq.* 364.   *Dessau.* 588.   1 *Wash.* 224.

Let the judgment be reversed.