**In the Matter of Richard and Eunice MAHLOCH, Dennis Mahloch, Debtors.**

Bankruptcy Nos. BK82–2072, BK82–2073.

United States Bankruptcy Court, D. Nebraska.

March 12, 1986.

Joseph Badami, of Badami & Radke, Lincoln, Neb., for debtors.

Gregory W. Searson, of Kutak, Rock & Campbell, Omaha, Neb., Joseph M. Russell, Chicago, Ill., for First Nat. Bank of Chicago.

Jerrold Strasheim and Timothy Haight, of Baird, Holm, McEachen, Pederson, Hamann & Strasheim, Omaha, Neb., for Saline State Bank.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

The Application for Sequestration of Rents and Profits by Saline State Bank in both of the above-entitled cases was consolidated for trial. Evidentiary hearing was held on November 12, 1985.

### History of the Case

The debtors filed their original petitions under Chapter 11 of the Bankruptcy Code on November 30, 1982.

The Saline State Bank (Bank) filed its Applications to Sequester Rents and Profits on September 28, 1983. Debtors and First National Bank of Chicago (FNB), an unsecured creditor, opposed the applications.

On May 25, 1984, Judge David Crawford, the Bankruptcy Judge, entered an order denying the Bank's applications.

On June 20, 1985, Judge C. Arlen Beam of the United States District Court for the District of Nebraska issued an order reversing the order of the Bankruptcy Court and remanding the case for further proceedings.

The Bankruptcy Court evidentiary hearing was held on November 12, 1985. Post-trial briefs were requested.

### Finding of Facts

On November 30, 1982, the debtors filed their petitions under Chapter 11 of the United States Bankruptcy Code. The Bank subsequently filed its proofs of claim in excess of $1,000,000 in each of the estates. The claims were secured by real estate mortgages, secured interests in crops, and assignment of land contracts and a portion of the debtors' claims in the bankruptcy estates of Harvey and Alice Mahloch (BK82–670, Neb.) and Mahloch Farms, Inc. (BK82–669, Neb.). The mortgages and land contracts contain a provision for assignment of rents and profits to the Bank upon default by the debtors. Such provision states:

"Time is of the essence hereof, and upon mortgagor's default in any covenant or agreement of this mortgage, including covenants to pay when due the sums secured by this mortgage, the mortgagee shall be entitled, at its sole option and without notice, to declare all sums secured by this mortgage to be immediately due and payable and may commence foreclosure of this mortgage by judicial proceedings; and, provided further, that upon such default the mortgagee, or a receiver appointed by a court, may at its option and without regard to the adequacy of the security, enter upon and take possession of the property and collect the rents, issues and profits therefrom and apply them first to the cost of collection and operation of the property and then upon the indebtedness secured by this mortgage; said rents, issues and

profits being hereby assigned to the mortgagee as further security for the payment of the indebtedness secured hereby."

The mortgages and contracts each include a provision that the debtors agree to pay when due all taxes against the real estate. The documents provide as follows:

"Mortgagor further covenants and agrees, with mortgagee, as follows:

3. *taxes, assessments.*

To pay when due all taxes, special assessments and all other charges against property...."

On November 30, 1982, the day the debtors filed their bankruptcy petitions, they were not in default under any term of the mortgages or contracts.

The real estate taxes on the mortgaged property became due for the year 1982 on December 31, 1982. The taxes were delinquent on May 1, 1983, and September 1, 1983.

The parties have stipulated that as of September 28, 1983, the date the Bank filed its applications, the Bank was undersecured. The stipulation is as follows:

"That at all times material herein from and after September 28, 1983, the date of the filing by the Saline Bank of its application to sequester, the unpaid amount of Bank's claim, excluding postpetition interest, was greater than the value of all security securing that claim, even if that collateral is deemed to include all rents and profits which are the subject matter of this application."

The debtors operated the farm business during 1983 as debtors in possession. From such operation the debtors earned the total amount of $243,472.88 which represents "rents and profits" generated by the debtors' use of real estate pledged as security for the Bank's loans.

Prior to the filing of the bankruptcy petition, the Bank had not commenced foreclosure proceedings, nor had it secured the appointment of a receiver to take possession of the rents and profits from the subject real estate.

All of the notes executed by the debtors to the Bank were demand notes. Prior to the bankruptcy petitions being filed, the Bank had not made any demand upon the debtors for payment of the notes.

Some of the property taxes which, according to the mortgage documents, were required to be paid on a timely basis, were unpaid at the time the application for sequestration was filed.

After filing the bankruptcy petitions, the debtors failed to hold any sales of real estate which were provided for in the loan agreement dated May 17, 1982. Pursuant to such agreement, the real estate was first to be listed for sale at private sale and eventually was to be sold at public auction. The listings were not accomplished and the sales were not held because the petition in bankruptcy had been filed. Eventually the property was sold through bankruptcy rather than through the loan agreement.

In the case of Dennis Mahloch, the amounts of rents and profits which are at issue are $108,998.99 plus any interest earned on that sum since the date of the hearing, November 12, 1985.

The amounts of rents and profits in issue in the cases of Richard and Eunice Mahloch aggregate $134,473.89 plus any interest attributable thereto after November 12, 1985. Of the $134,473.89, $55,275 is income realized from property owned separately by Eunice Mahloch plus the income realized from Eunice Mahloch's one-half interest in the ownership of the Saline County quarter section.

The remainder of the rents and profits attributable to Richard and Eunice, $79,198 is allocated by the parties based upon Richard's ownership interest.

Apart from the rents and profits claimed in these cases, the Bank has no other source of payment for its claims.

The unpaid balance of the proof of claim in Richard and Eunice's case is $560,828.96 principal plus prepetition interest of $135,-508.66.

In the case of Dennis Mahloch the unpaid balance on the proof of claim is $535,723.40 principal plus unpaid prepetition interest of $132,186.07.

In summary, the unpaid amount of the claim of the Bank of Richard and Eunice's case is about $700,000 and in Dennis's case of about $660,000 with approximately $250,000 available and in dispute.

### Issue and Decision

*Issue:* May a mortgagee perfect its interest in rents and profits postpetition if the debtor was not in default prepetition?

■ *Decision:* The creditor cannot rely upon postpetition "defaults" to justify perfection of an interest in rents and profits and obtain an order from the Bankruptcy Court sequestering such rents and profits.

### Conclusions of Law

■ Since there was no prepetition default, the Bank, prepetition, could not have filed a State Court mortgage foreclosure action prepetition and could not have obtained the appointment of a receiver pursuant to § 25–1081 R.R.S. 1943. Thus, since the filing of a petition in bankruptcy did not hold the Bank off from its State Court remedies, because it had no right to State Court remedies on the date of the filing of the petition, the Bank had no right to a sequestration of rents and profits following the filing of the petition.

The District Court opinion remanding this case to the Bankruptcy Court for a finding of fact and entry of the appropriate order assumed that the debtors were in default under the terms of one or more of their agreements with the Bank prior to the petition being filed. That opinion, at page 2, stated:

> "It is undisputed that debtors were in default on the applicable promissory notes and loan agreements when they filed their bankruptcy petitions."

However, after a review of the evidence, it is apparent that the debtors were not in default when the bankruptcy petitions were filed.

Based upon the assumed default, the District Court found that, but for the bankruptcy petition, the Bank could have filed an action in State Court requesting the appointment of a receiver and thus perfected its security interest in the rents and profits. By such perfection under State nonbankruptcy law, the rents and profits would thereby be included in the terms of the security interest created by the prepetition security agreement.

There is no question that State law governs the right to rents and profits realized from secured real estate. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). It is also undisputed that rents and profits clauses in mortgage documents are valid and enforceable in Nebraska. *Central Nebraska Savings Bank v. First Cadco Corp.,* 186 Neb. 112, 181 N.W.2d 261 (1970); *Pennsylvania Mutual Life Ins. Co. v. Katz,* 139 Neb. 501, 297 N.W. 899 (1941).

Also, as quoted in the decision by Judge Beam concerning the remand of this case, Nebraska law also recognizes an "equitable lien" theory upon default:

> "On a condition broken by which the mortgagee is authorized to commence foreclosure proceedings, if the property be inadequate security (the mortgagee) has thence forward an equitable lien upon the rents and profits, or so much thereof as may be necessary to the security of the mortgage debt which he may enforce by proper proceeding. *Federal Mortgage Corp. v. Ganser,* 146 Neb. 635, 20 N.W.2d 689 (1945)."

However, this "equitable lien" is dependent upon, at the very least, a default or breach of the agreement which would authorize the mortgagee to commence a foreclosure action.

The proper procedure to enforce such a lien outside the context of bankruptcy includes the commencement of foreclosure proceeding requesting the appointment of a receiver to collect the rents and profits. *Prudential Insurance Co. v. Farm Inv. Co.,* 123 Neb. 578, 243 N.W. 842 (1932);

*Huston v. Canfield*, 57 Neb. 345, 77 N.W. 763 (1899).

A creditor that desires to perfect its lien upon the rents and profits by bringing a mortgage foreclosure action in the State Court is prohibited from doing so by § 362 of the Bankruptcy Code. The automatic stay of § 362, upon the filing of a petition, operates as a stay of:

> any act to create, perfect or enforce any lien against property of the estate; § 362(a)(4) and
>
> any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title. § 362(a)(5).

The drafters of the Code were aware that the broad language of § 362 would stop the perfection of certain liens, including security interests, statutory liens and judicial liens as well as inchoate charges against property. See *Collier on Bankruptcy*, 15th Edition, Paragraph 362.04. To provide creditors with the same protection the creditor might expect under State law with regard to perfection of liens, the drafters provided the creditor with the benefit of § 546(b) which provides:

> "The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement."

According to Collier, *supra*, this language should be read in a broad sense and would protect, for example, the holder of a purchase-money security interest who was given ten days to perfect and having done

so would defeat an intervening creditor. See Colliers, Paragraph 362.04.

By a review of the interplay between the various provisions of the Bankruptcy Code, specifically § 362 and § 544 and § 546(b) and perhaps § 552(b), it is apparent that the drafters intended to protect the enforcement rights of a creditor who prepetition had perfected a lien on property of the debtor or property of the estate.

There is nothing in the Bankruptcy Code or the Rules which permit a creditor to perfect a lien postpetition, except for the limited perfection remedies available under § 546.

No section of the Bankruptcy Code permits a creditor to treat postpetition acts or omissions as a "default" under a prepetition mortgage giving rise to a right on behalf of the creditor to obtain perfection of a lien within the Bankruptcy Court.

In the *Butner* case, *supra*, the Supreme Court of the United States was reviewing a bankruptcy case filed under the Act rather than under the new Code. The *Butner* court spent several pages discussing the type of relief that a Bankruptcy Court could offer a creditor who was stayed from enforcing State law remedies. However, the holding of *Butner* was simply that the Bankruptcy Court should look to State law to determine whether or not a creditor's interest in rents and profits was perfected which would enable the court to sequester the rents and profits for the benefit of the creditor rather than giving possession of such rents and profits to the trustee for the benefit of the general creditors. 440 U.S. 48 at 52, 99 S.Ct. 914 at 916. In *Butner* there was a prepetition default. Since *Butner*, the statute has been completely changed and the statute itself provides the mechanism for protection of creditor's rights so thoroughly discussed in *Butner*.

These Mahloch cases were filed under Chapter 11 of the Bankruptcy Code. Under Chapter 11 the debtor is given an opportunity to attempt to formulate a plan which will satisfy the debtor's obligation to creditors. Chapter 11 has elaborate provi-

sions for disclosure, contents of plan, confirmation standards and powers of the debtor as debtor-in-possession. The right granted the debtor-in-possession to have an opportunity to reorganize the financial affairs of the debtor is subject to rights granted the creditor under §§ 362, 363 and 552(b), among others. Those sections permit the creditor to ask the court to lift the automatic stay so that the creditor can enforce State Court rights or to require that the debtor provide some type of adequate protection of the creditor's interest in the collateral which is claimed to be subject to a perfected security interest.

Under this statutory scheme, the creditor is temporarily held off from obtaining possession of the collateral in which it holds a validly perfected security interest if and only if the debtor provides the creditor with "adequate protection" of the creditor's interest in the collateral. Before the debtor is required to provide such adequate protection, the creditor must show that its interest in the collateral is validly perfected.

Rents and profits which come into the possession of debtor postpetition may be subject to a prepetition security interest under § 552(b) and may be "cash collateral" under § 363. However, a real estate mortgagee's interest in rents and profits, which may be the proceeds of actual rental payments and/or the proceeds of the sale of crops grown upon the mortgaged property, is subject to State law requirements concerning perfection of that interest. See *Collier, supra*, Paragraph 363.02; *Butner v. United States, supra.*

To require, as the Bank in this case urges, that the Bankruptcy Court find that any postpetition acts or omissions which would have been breaches of the loan agreements if they had occurred prepetition, are "defaults" and then to find that the Bankruptcy Court is required, if such "default" exists, to give the Bank the remedy it would have had in State Court if a default had occurred prepetition, seems to require the Bankruptcy Court to pretend that the Bankruptcy Code does not exist.

It is the opinion of this Court that upon the filing of a petition in bankruptcy the parties are frozen in position subject to certain rights and remedies incorporated into the Bankruptcy Code itself. The creditor cannot go into State Court to foreclose whether there existed a prepetition default or whether there occurs a postpetition default. The creditor cannot perfect security interests that were not perfected prior to the filing date. The creditor can, however, ask the court to grant certain types of relief so that the creditor's perfected interest in collateral is not diminished during the bankruptcy proceedings.

If a creditor has some inchoate contract right to or equitable lien on "rents and profits" which was not and could not have been perfected under State law prepetition, the intervention of the bankruptcy proceeding prohibits that inchoate right from becoming perfected, prohibits that alleged interest in rents and profits from becoming an interest in cash collateral and, in the opinion of this Court, prohibits the Bankruptcy Court from sequestering the rents and profits for the benefit of the mortgage creditor.

The reason for this result is that the debtor-in-possession, as of the commencement of the case, has the status of a bona fide purchaser of real property 11 U.S.C. § 544(a)(3) or a bona fide lien creditor 11 U.S.C. § 544(a)(2). Under these sections of the Code, the debtor-in-possession, exercising the powers of a trustee, can avoid equitable liens. See *In re Harbour House Operating Corp.*, 26 B.R. 324, 331 (Bkrtcy. Mass.1982).

Practically speaking, if this Court were to find that a mortgagee could enforce its claim to the rents and profits postpetition when the rents and profits clause is triggered only by a "default" that does not occur until after the petition in bankruptcy is filed, there would be very little possibility of any farm Chapter 11 bankruptcy continuing beyond the first date taxes became due or a note installment became due. For example, under the theory the Bank proposes, if the debtor files Chapter 11 in the

750

fall of the year and obtains crop financing for the next crop year from some other creditor, the Bank can sit and wait until the debtor puts in the crop, takes out the crop, fails to pay the property taxes on a timely basis or fails to make any payment under the loan documents. It can then file a motion to sequester all the rents and profits, allege and prove that the land is not sufficient to discharge the mortgage debt and the court would order the proceeds of the crop season to be sequestered for the benefit of the mortgagee. Supposedly the court would order such sequestration notwithstanding the Bankruptcy Code sections concerning the powers of a debtor-in-possession and notwithstanding the claims of other secured creditors who have a perfected security interest in growing crops and the products and proceeds thereof.

If that is the law, there is no incentive for a farmer to attempt to reorganize under Chapter 11 in the District of Nebraska because there will be no unencumbered assets to fund a plan. If that is the law, creditors who have loaned money to a farmer and taken a security interest in the growing crops, products and proceeds will be greatly surprised that the mortgage lender whose mortgage was not in default on the date the petition in bankruptcy was filed has a prior claim to the "rents and profits" which will leave the secured creditor under the Uniform Commercial Code with little or nothing. If that is the law, unsecured creditors' rights will be changed by a mortgage lender that has a hidden lien which can be perfected, to the detriment of unsecured creditors, postpetition.

■ This Court concludes that for a mortgagee to have a right to an order sequestering rents and profits there must first have been a default under the mortgage documents prior to the bankruptcy petition being filed; secondly, that the creditor has perfected its interest in the rents and profits prepetition. In this case there was no prepetition default and there was no perfection. Therefore, the Bank does not have a right to an order sequestering rents and profits.