**In re PRICHARD PLAZA ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 87–40637 (JFQ).**

United States Bankruptcy Court,
D. Massachusetts.

March 28, 1988.

David Nickless, Nickless & Phillips, Fitchburg, Mass., for debtor.

William Macauley, Craig and Macauley, Boston, Mass., for First Safety Fund Nat. Bank.

Victor G. Milione, Widett, Glazier & McCarthy, Boston, Mass., for Mut. Bank.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

A bank holding a mortgage and assignments of rents and leases claims the rents or adequate protection for not receiving and retaining them. The Court holds that the Bank is entitled to neither because it was not in possession of the real estate at the time this Chapter 11 case began. Involved is the resolution of an important question of state mortgage law undecided by the Supreme Judicial Court of Massachusetts.

## I FACTS

The facts are undisputed. Prichard Plaza Associates Limited Partnership (the "Debtor") is the beneficial owner of three contiguous parcels (Lots 1, 2A and 2B) forming an integrated complex of offices and retail stores located on Main Street in Fitchburg, Massachusetts. It purchased the property from David C. Donahue ("Donahue") in April of 1986, taking title in the name of Marvin P. Smith ("Smith"), as Trustee of Prichard Plaza Realty Trust (the "Trust").

At the time of the purchase, Donahue executed a promissory note in the principal sum of $1,030,000 payable to First Safety Fund National Bank (the "Bank"). This note is secured by a mortgage and security agreement covering the property (the "Mortgage") and another document entitled "Assignment of Landlord's Interest in Leases and Assignment of Rents" (the "Lease Assignment"). Both the Mortgage and Lease Assignment were recorded with the real estate records pursuant to a Massachusetts statute which provides that a conveyance not so recorded, including a mortgage and an assignment of rents or profits, "shall not be valid as against any person, except the grantor ..., his heirs and devisees and persons having actual notice of it...." Mass.Gen.L. ch. 183, § 4. Upon taking title, Smith executed an assumption agreement whereby on behalf of the Trust he assumed Donahue's obligations to the Bank under the $1,030,000 note and Mortgage, on a nonrecourse basis. Smith also assumed on a nonrecourse basis pre-existing indebtedness owed to the Bank as trustee under certain 1979, 1980 and 1981 mortgage bonds of the Massachusetts Industrial Finance Agency. The Bank is now the holder of all these bonds. Smith obtained $800,000 of purchase money financing from Mutual Fund Bank ("Mutual"), executing a recourse note and mortgage in Mutual's favor. Mutual's mortgage is a first mortgage which covers only Lot 2B. Payments on Mutual's mortgage are current. The Bank's mortgage securing its $1,030,000 note is a second mortgage on Lot 2A and a third mortgage on Lots 1 and 2B. The Bank also has mortgages securing the bonds of the Massachusetts Industrial Finance Agency; one of these is a first mortgage on Lot 2A, another is a first mortgage on Lot 1, and others are second mortgages on Lots 1 and 2B.

The Bank's Mortgage securing the $1,030,000 note contains clauses assigning rents and leases in these terms:

Mortgagor covenants and agrees:

. . . .

2. Assignment of Rents. As additional security for this mortgage and for the

Obligations referred to above, the Mortgagor hereby assigns and transfers to the Holder any and all sums of money now due or to become due from the leasing, letting or other use of the mortgaged premises. Said sums are to be collected by the Mortgagor so long as there is no uncured default under the terms of this mortgage or the Obligations referred to above. In the event of any such default, the Holder may, by written notice to the tenant or occupant of the premises, require that said tenant or occupant pay all rents and other sums due or thereafter to become due directly to the Holder, until further notice by the Holder.

3. Assignment of Leases. At any time upon notice from the Holder to submit for examination all leases then in force affecting the Premises; the Mortgagor hereby irrevocably assigns to the Holder any or all of such leases now existing or hereafter entered into and hereby grants to Holder full authority as Mortgagor's true and lawful attorney-in-fact, coupled with an interest, with full power of substitution, to make, execute, acknowledge and deliver any further written assignments of said leases.

The Lease Assignment, which secures the same $1,030,000 note, assigns to the Bank "all of Assignor's interest as Landlord in and to all leases of building areas and space in buildings ... whether such Leases are now in effect or are hereafter entered into, together with all the rents, income and profits...." The Lease Assignment also states:

So long as there shall exist no default by Assignor in the performance of any obligations, the performance of which is secured hereby, or in the performance of any obligation, covenant or agreement herein or in said Leases contained, Assignor shall have the right to collect, upon but not prior to accrual, all rents, income and profits from the property and to retain, use and enjoy the same.

Upon or at any time after default in the performance of any obligation secured hereby or in the performance of any obligation, covenant or agreement herein or in said Leases contained, Assignee, without in any way waiving such default, may at its option, without notice and without regard to the adequacy of any other remedies available to Assignee, either in person or by agent, with or without bringing any proceedings, take possession of the property and have, hold, manage, lease and operate the same, on such terms and for such period of time as Assignee may deem proper, and may demand, collect, sue for and receive all rents and income, including those past due and unpaid, of the Property, with full power to make from time to time all alterations, renovations, repairs or replacements thereto as may deem proper to Assignee, and to apply such rents and income to the payment of (a) the cost of all such alterations, renovations, repairs and replacements, and expenses incident to taking and retaining possession of the Property, and the management and operation thereof, and keeping the same properly insured; (b) all taxes, charges, claims, assessments, and any other liens which may affect the Property, and premiums for said insurance, with interest on all such items; (c) the cost of performance of the obligations secured hereby, together with all costs and attorneys' fees; and (d) any sums due from Assignor to Assignee, in such order of priority as to any of such items as Assignee in its sole discretion may determine, any statute, law, custom or use to the contrary notwithstanding.

On June 26, 1987, the Bank filed a complaint to foreclose the Mortgage with the Massachusetts Land Court, having made previous demand upon Smith for payment in full of the $1,030,000 note by reason of default in several months' payments. On July 2, 1987, the Bank wrote to Smith advising him that an event of default had occurred and telling him that as assignee of the rents the Bank was notifying tenants to pay rent directly to it. By letters dated July 1, 1987, the Bank made demand upon the tenants for payment of all rent then due or to become due thereafter, including the July rent. Since then, a num-

ber of the tenants have been paying the Bank. Others have continued to pay the Debtor, and still others have withheld rent or placed it in escrow pending adjudication or agreement concerning which party is entitled to be paid.

On September 9, 1987, judgment was entered in the Massachusetts Land Court empowering the Bank "to make an entry and to sell the property...." The Bank has not made entry on the property under Mass.Gen.L. ch. 244, §§ 1, 2. It did schedule an auction sale of the property for November 24, 1987. The Debtor filed its Chapter 11 petition with this Court on November 23, 1987. That filing automatically stayed the auction sale pursuant to 11 U.S. C. § 362.

The muddled situation on rent payments has remained the same since the Chapter 11 filing. Some tenants are still paying the Bank, some are paying the Debtor and some are withholding payment or placing their payments in escrow. The Bank has placed all rents which it has received into a separate account, without applying them against its indebtedness. The Debtor has continued to manage the property and pay whatever operating expenses that are being incurred, except taxes.

On November 23, 1987, the day the Debtor filed its Chapter 11 petition, the Bank also filed a motion seeking either to dismiss the Chapter 11 case or to terminate the automatic stay, and requesting adequate protection if the other relief it sought was not granted. The Court heard and denied the motion on that same day. In its findings of fact and rulings of law, which were dictated into the record, the Court found that the property was not depreciating in value. The Court ruled that the Bank had adequate protection under § 362, relying upon the Fifth Circuit's decision in *United Savings Association of Texas v. Timbers of Inwood Forest, Ltd. (In re Timbers of Inwood Forest, Ltd.)*, 808 F.2d 363 (5th Cir.1987) (*en banc*) (reinstating and supplementing panel opinion at 793 F.2d 1380). That decision has since been affirmed by the Supreme Court. — U.S. —, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

The Bank now files the present motion entitled "Motion for Adequate Protection and Sequestration of Rents" in which it requests that it be permitted to continue to receive rents and to apply them to its debt, and asks the Court either to prohibit the Debtor from using rent monies or to condition that use upon the Debtor providing the Bank adequate protection for loss of the rents. In addition to opposing the motion, the Debtor requests the Court to order the Bank to turn over the rents it has collected and to release the tenants from any obligation to pay the Bank further rent.

## II  PRECLUSIVE EFFECT OF ORDER OF NOVEMBER 23, 1987

■ The Debtor contends that the Court's prior order of November 23, 1987, and the findings and rulings issued therewith, preclude the Bank from the relief it now seeks. The question of the Bank's adequate protection was of course relevant in the prior hearing, and continues to be relevant here. But the property interest covered by the two motions is different. In seeking relief from the automatic stay in order to conduct its scheduled foreclosure sale, the Bank sought adequate protection for its *entire* interest in the property. The Court ruled that this entire interest was adequately protected, primarily because the property was not depreciating in value. Here the Bank seeks protection for only one aspect of its property interest, its security interest in rents. If, absent the automatic stay, the Bank now has the right to collect the rents being currently paid, Congress has determined that this right, as cash collateral, is entitled to its own adequate protection determination, and the Debtor is prohibited from even using the rents unless the Bank's interest in the rents is first adequately protected. 11 U.S. C. § 363(c)(2). The legislative history of § 363 supports the reason for this safeguard, a reason which seems obvious from the difference between cash and tangible property. Because cash and cash equivalents can be quickly consumed or transferred, Congress regarded security interests in them as deserving of special protection. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess.

181–82 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6141–6143.

The Court's prior denial of the Bank's motion to terminate the automatic stay may undoubtedly have issue preclusive effect on the question of whether the real estate was decreasing in value, at least as of then. The issue was of prime relevance to the question of the Bank's adequate protection of its over-all property interest. But the prior order has no preclusive effect upon the present legal issue concerning adequate protection of the Bank's interest in the rents. *In re Gaslight Village, Inc.,* 6 B.R. 871, 875 (Bankr.D.Conn.1980).

## III EFFECT OF STATE LAW UPON BANK'S RIGHT TO RENTS

The Bank's argument on its motion is deceptively simple: Section 363 expressly includes rents in the definition of cash collateral; the Bank has an assignment of rents and leases; *ergo,* the Bank has a present right to rents which must be adequately protected as a condition of the Debtor's use of the property.

■ Section 363 does not, however, operate to create and define rights in property. Its function is to protect security interests to the extent they exist under state law. The Bankruptcy Code generally depends upon state law to establish the nature and extent of property interests. *See* 4 *Collier on Bankruptcy* ¶ 541.02[1] (15th ed. 1987); 11 U.S.C. § 365 (referring to state law to determine rights to assume executory contracts and leases); § 502(b)(1) (claims against estate may be disallowed if unenforceable under state law); § 541 ("interests" of debtor which become property of the estate are determined by reference to state law); § 546(b) (trustee's avoiding powers limited by certain state perfection rules). Section 363(a), moreover, states that cash collateral includes "rents … subject to a security interest as provided in section § 552(b) of this title…." Section 552(b), which deals in part with the post-petition effect of security interests in rents and other cash proceeds, provides that a security interest shall extend to collateral received after the filing "to the extent pro-

vided by such security agreement and *by applicable non-bankruptcy law…."* (emphasis supplied).

■ The designation of rents as cash collateral in § 363 must also be viewed in the context of prior case law under the Bankruptcy Act of 1898. A split had developed among the circuits concerning a mortgagee's right to rents accruing during a bankruptcy case. The Third and Seventh Circuits fashioned their own federal rule based upon the equities as they saw them, under which they gave the mortgagee all rents payable subsequent to a bankruptcy filing. *See, e.g., Central Hanover Bank & Trust Co. v. Philadelphia & Reading Coal & Iron Co.,* 99 F.2d 642 (3rd Cir.1938); *Curtis v. Amsler (In re Wakey),* 50 F.2d 869 (7th Cir.1931); *Bindseil v. Liberty Trust Co.,* 248 F. 112 (3rd Cir.1917). The Second, Fourth, Sixth, Eighth and Ninth Circuits, on the other hand, followed state law; they gave the mortgagee rents during bankruptcy only if he would have been entitled to rents under state law had there been no bankruptcy. *See, e.g., Fidelity Bankers Life Ins. Co. v. Williams (In re O'Neill Enterprises, Inc.),* 506 F.2d 1242 (4th Cir.1974); *Green v. Vanston Bondholders Protective Committee (In re American Fuel & Power Coal Co.),* 151 F.2d 470 (6th Cir.1945); *Tower Grove Bank & Trust Co. v. Weinstein (In re Hallenberg–Wagner Motor Co.),* 119 F.2d 120 (8th Cir.1941); *Lacoe v. De Long (In re Hotel St. James Co.),* 65 F.2d 82 (9th Cir.1933); *In re Brose,* 254 F. 664 (2nd Cir.1918). The Supreme Court resolved the division in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), where it held that state law controls. It reasoned that Congress had generally left the determination of property rights to state law, and that this achieved a desirable uniformity of treatment in federal and state courts which discouraged forum shopping. 440 U.S. at 55, 99 S.Ct. at 918. Although *Butner* was decided after the passage (but before the effective date) of the present Bankruptcy Code, Congress amended § 363 in 1984 to include rents in the definition of cash collateral (which then conformed its

wording to the legislative history) without any indication that it disapproved of *Butner*. It is a rule of statutory construction that if Congress intended legislation to change a judicially created concept, it can be expected to make that intent specific. *See Kelly v. Robinson*, 479 U.S. 36, —— n. 13, 107 S.Ct. 353, 361 n. 13, 93 L.Ed.2d 216 (1986). Courts which have considered the question thus regard the state law rule of *Butner* to be controlling under § 363. *See, e.g., Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441, 443 (5th Cir.1984); *Waldron v. Northwest Acceptance Corp. (In re Johnson),* 62 B.R. 24, 28 (Bankr. 9th Cir.1986).

## IV GENERAL LAW OF SECURITY RENT ASSIGNMENTS

Massachusetts law, therefore, controls. Although the Bank holds security assignments of rents and leases, it was not in possession of the premises. Whether this lack of possession is enough to deprive it of a present right to rents is not readily apparent under Massachusetts law. *See* E. Swartz, *Lease Drafting in Massachusetts* § 9.31 n. 3 (1961). Before reviewing that law, therefore, we briefly examine the general law throughout the country.

A mortgagee is generally regarded as having no claim to rents until he takes possession of the premises. 2 *Jones on Mortgages* § 976 (8th ed. 1928). Specific assignments of rents are not looked upon with favor by the courts; such provisions are construed to refer to rents accruing after entry. *Id.* Courts have also declared assignments of rents ineffective based upon a variety of statutes, such as statutes banning ejectment, statutes confirming possession in the mortgagor, and statutes declaring mortgages to be liens. Comment, *The Mortgagee's Right to Rents After Default,* 50 Yale L.J. 1424, 1426 (1941). The real basis for the refusal by the courts to give effect to rent assignment clauses may well be found in the policy of protecting the mortgagor's possession. *Id.* at 1427. A number of courts have, however, upheld these clauses, but in doing so they require some action by the mortgagee to reduce the rents to possession, such as making a physical entry into possession or securing the appointment of a receiver to collect the rents and manage the property. *Id.* at 1427–28; Comment, *The Mortgagee's Right to Rents and Profits Following a Petition in Bankruptcy,* 60 Iowa L.Rev. 1388, 1391 (1975). Although the decisions leave unclear the reason for requiring either actual or constructive possession, they apparently view the right to income as an incident of possession, so that an assignment of rents does not become activated until possession. *Id. See, e.g., Freedman's Savings & Trust Co. v. Shepherd,* 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888); *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441 (5th Cir.1984) (interpreting Texas law); *Golden Enterprises, Inc. v. United States,* 566 F.2d 1207 (4th Cir. 1977), *aff'd. sub nom., Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979) (interpreting North Carolina law); *Tower Grove Bank & Trust Co. v. Weinstein (In re Hallenberg–Wagner Motor Co.),* 119 F.2d 120 (8th Cir.1941) (applying Missouri law); *Central States Life Insurance Co. v. Carlson (In re Chilton),* 98 F.2d 102, 105 (10th Cir.1938); *Lacoe v. De Long (In re Hotel St. James Co.),* 65 F.2d 82 (9th Cir.1933) (applying California law); *In re Brose,* 254 F. 664 (2nd Cir.1918) (applying New York law); *In re Van Rooy,* 21 F.Supp. 431 (N.D.Ohio 1937); *In re Pine Lake Village Apartment Co.,* 17 B.R. 829 (Bankr.S.D.N.Y.1982) (applying New York law). Occasionally courts will find reason to give effect to rent assignments without requiring possession. *See, e.g., Fidelity Bankers Life Insurance Co. v. Williams (In re O'Neill Enterprises, Inc.),* 506 F.2d 1242 (4th Cir.1974) (court relied on *In re Ventura–Louise Properties, Inc., ante); Great West Life Assurance Co. v. Rothman (In re Ventura–Louise Properties),* 490 F.2d 1141 (9th Cir.1974) (assignment viewed as an "absolute assignment" rather than as a security interest); *In re Gould,* 78 B.R. 590 (D.Idaho 1987) (construing deed of trust to give "absolute" assignment); *United States v. Farrell (In re*

*Fluge)*, 57 B.R. 451 (Bankr.D.N.D.1985) (court recognized that most states require mortgagee to have possession before he has a present right to rents under assignment, but held that in North Dakota all that the mortgagee need do is to file a claim for rents in the bankruptcy proceeding). Some states also permit mortgages to stipulate that possession is not necessary before collecting rents. *See Grannis–Blair Audit Co. v. Maddux*, 167 Tenn. 297, 69 S.W.2d 238 (1934); Minn.Stat. § 559.17; Wash.Rev.Code § 7.28.230.

In summary, therefore, in most of the states an assignment of rents gives the mortgagee no right to collect rents unless and until he takes possession of the property either himself or through a receiver. If, however, he does take possession prior to the bankruptcy proceeding, he is regarded as satisfying the necessary condition precedent so that the rents are treated as cash collateral for which he is entitled to adequate protection. *See In re Gaslight Village, Inc.*, 6 B.R. 871 (Bankr.D.Conn.1980). We now turn to Massachusetts law.[1]

## V BANK'S RIGHTS UNDER MASSACHUSETTS LAW

■ A mortgage is designed by statute in Massachusetts to place legal title in the mortgagee. *See* Mass.Gen.L. ch. 183, §§ 12, 18 19, app. form (5). But this is a bare legal title without right of possession. Mass.Gen.L. ch. 183, § 26 provides:

> Until default in the performance or observance of the condition of a mortgage

of real estate, the mortgagor and his heirs and assigns may hold and enjoy the mortgaged premises and receive the rents and profits thereof, unless otherwise stated in the mortgage.[2]

The mortgagor's right of possession protects the mortgagee from responsibility for maintenance of the property. *Negron v. Gordon*, 373 Mass. 199, 366 N.E.2d 241 (1977) (mortgagee not in possession cannot be held responsible for violations of sanitary code). It is only when the mortgagee takes possession after default that he can incur liability for not properly maintaining the property. *Skolnick v. East Boston Savings Bank*, 307 Mass. 1, 29 N.E.2d 585 (1940) (mortgagee in possession held liable in tort for negligent repairs). The right to possession is the real distinction between title and lien states. 4 *American Law of Property* § 16.15 (1952); G. Osborne, *Handbook of the Law of Mortgages* § 15 (1951).

Thus Massachusetts is properly described as an intermediate state rather than a title state. 4 *American Law of Property* § 16.14 (1952). At one time, a mortgagee did have the immediate right to possession in Massachusetts. *Lackey v. Holbrook*, 52 Mass. (11 Met.) 458 (1846); *Fay v. Cheney*, 31 Mass. (14 Pick.) 399 (1834). But even then the arrangement was largely formalistic. Chief Justice Shaw put it this way:

> The first great object of a mortgage is, in the form of a conveyance in fee, to give the mortgagee an effectual security,

---

1. Although the issue before us—whether a mortgagee must take possession in order to be entitled to collect rents pursuant to an assignment of rents and leases—has not been decided by Massachusetts' courts or the state's legislature, we have an obligation to confront the question and decide it absent special circumstances. *Colorado River Conservation District v. United States*, 424 U.S. 800, 813–19, 96 S.Ct. 1236, 1244–47, 47 L.Ed.2d 483 (1976). We find no such circumstances here. Moreover, it is perhaps more likely that the present question will come up in the context of a bankruptcy proceeding where the automatic stay impedes the foreclosure process. In deciding this question, we have attempted to use the Massachusetts statutes, analogous case law, and other pertinent sources to reach a result in harmony with the result we believe the Supreme Judicial Court of

Massachusetts would reach if it were confronted with the same question. *See generally* J. Moore, W. Taggart, A. Vestal & J. Wicker, *Moore's Federal Practice* ¶¶ 0.309[2], 0.309[3] (2d ed. 1987).

2. This statute seems contrary to Mass.Gen.L. ch. 244, § 9 which provides in part: "This chapter [governing foreclosure] shall not prevent a mortgagee or person claiming under him from entering on the land or from recovering possession thereof before breach of condition of the mortgage, if there is no agreement to the contrary...." To the extent these two statutes are irreconcilable, we regard Mass.Gen.L. ch. 183, § 26 as controlling because it was enacted long after Mass.Gen.L. ch. 244, § 9. *See* 2A N. Singer, *Sutherland Statutory Construction* § 51.02 (Sands rev. 4th ed. 1984).

by the pledge or hypothecation of real estate, for the payment of a debt, or the performance of some other obligation. The next is, to leave to the mortgagor, and to purchasers, creditors, and all others claiming derivatively through him, the full and entire control, disposition and ownership of the estate, subject only to the first purpose, that of securing the mortgagee. Hence it is, that, as between mortgagor and mortgagee, the mortgage is to be regarded as a conveyance in fee; because that construction best secures him in his remedy and his ultimate right to the estate, and to its incidents, the rents and profits. But in all other respects, until foreclosure, when the mortgagee becomes the absolute owner, the mortgage is deemed to be a lien or charge, subject to which the estate may be conveyed, attached, and in other respects dealt with, as the estate of the mortgagor. And all the statutes upon the subject are to be so construed; and all rules of law, whether administered in law, or in equity, are to be so applied, as to carry these objects into effect.

*Ewer v. Hobbs,* 46 Mass. (5 Met.) 1, 3 (1842).

We begin with this hoary distinction between the title and lien theories of mortgage law because there are vestiges of that distinction in our present question. Courts in title states have relied upon their title theory in affirming the right of mortgagees to rents under their mortgages or assignments in the mortgages. *See, e.g., Goodwin v. Keney,* 49 Conn. 563, 568 (1882); *Grannis–Blair Audit Co. v. Maddux,* 167 Tenn. 297, 69 S.W.2d 238 (1934). Because Massachusetts mortgage law is intermediate between title and lien theory, the rationale of such decisions in title states is not present here.

Mass.Gen.L. ch. 183, § 26, quoted above, provides that until default the mortgagor may "hold and enjoy the mortgaged premises *and* receive the rents and profits ..." (emphasis supplied). The statute thus links possession with the right to receive rents. Although it permits the mortgagor's rights to be changed by a provision in the mortgage, it would seem somewhat more likely than not that the change it envisions is one which takes away both the right to possession and rents. But because the wording of the statute does not seem sufficiently conclusive to form a basis for our decision, we turn to other statutes which are more determinative of the question.

There are four methods of foreclosure in Massachusetts: (1) by sale under the power of sale contained in the mortgage (Mass. Gen.L. ch. 244, §§ 11–17C); (2) by open and peaceable entry followed by three years of peaceable possession, with recording of a certificate of the initial entry within thirty days of entry (Mass.Gen.L. ch. 244, §§ 1, 2); (3) by possession obtained through court order followed by three years of peaceable possession (Mass.Gen.L. ch. 244, §§ 4–10); (4) by bill of equity under Mass. Gen.L. ch. 185, § 1(k). *See Negron v. Gordon,* 373 Mass. 199 n. 4, 366 N.E.2d 241, 245 n. 4 (1977). Here the Bank was proceeding under the most common method, foreclosure through sale. But it was also purporting to foreclose under its assignments of rents and leases through collection of rents while remaining out of possession. We find no statutory authority for it to do so. Certainly the provisions of the Uniform Commercial Code as enacted in Massachusetts are of no aid to the Bank. The U.C.C. does not apply to the creation or transfer of an interest in or lien upon real estate, or rents or profits therefrom. Mass.Gen.L. ch. 106, § 9–104(j). Indeed, one provision of the U.C.C. works against the Bank. It expressly authorizes foreclosure upon a security interest in accounts through notification of account debtors to make payments to the secured party. Mass.Gen.L. ch. 106, § 9–502(1). There is no comparable statute permitting a mortgagee out of possession to collect rents and profits pursuant to a rent or lease assignment; the statutes referred to above only give the mortgagee the right to take possession with its accompanying benefits and burdens.

Neither the Court's research nor that of the parties discloses a Massachusetts decision deciding this question. The intimations in the decisions, however, are consist-

ent with our conclusion from the statutory framework. When the Supreme Judicial Court of Massachusetts has had occasion to set forth the various methods of foreclosure, it has not included obtaining payment under rent assignments through notification without possession. *See Negron v. Gordon, supra; Beaton v. Land Court,* 367 Mass. 385, 326 N.E.2d 302, 307 (1975). Numerous statements of that court, moreover, appear to stress possession as a prerequisite to a mortgagee's right to rent. *See, e.g., Lamson & Co., Inc. v. Abrams,* 305 Mass. 238, 242, 25 N.E.2d 374, 376 (1940) ("The mortgagee, after a breach of the conditions of the mortgage, is not entitled to receive the rent without an entry...."); *Noble v. Brooks,* 224 Mass. 288, 291, 112 N.E. 649, 649 (1916) (a mortgagee who enters and gives notice to a tenant is entitled to all accruing rent from the tenant); *Elmore v. Symonds,* 183 Mass. 321, 323, 67 N.E. 314, 316 (1903) (A mortgagee must give notice to tenants *and* enter onto the mortgaged premises in order to acquire legal title to the rents; it is "doubtful whether a notice given by a mortgagee to tenants that they are to pay rent to him, or any other act ... *not* amounting to an entry or equivalent to taking possession by him, can defeat the right of a mortgagor ... to take the rents and profits of the mortgaged real estate"); *Wilder v. Houghton,* 18 Mass. (1 Pick.) 87 (1822).

The related decisions in *Winnisimmet Trust, Inc. v. Libby,* 232 Mass. 491, 122 N.E. 575 (1919) (*Winnisimmet I*) and *Winnisimmet Trust, Inc. v. Libby,* 234 Mass. 407, 125 N.E. 599 (1920) (*Winnisimmet II*) are not authority for the proposition that the right to rents, as an interest in real estate, may be foreclosed upon without taking possession. In those cases the court did not purport to deal with foreclosure under an assignment of rents, but merely addressed rights under an assignment held by a bank which was not a mortgagee. The record in the case reveals the reason

for the court's lack of discussion of foreclosure. Although the instrument of assignment provides that it is given as security, it contains no requirement of default as a condition to the right to rents; in referring to the related debt, it merely provides that, upon payment of the debt, the assignment is to be cancelled. Thus the parties apparently intended to use the assignment as a means for payment in normal course rather than as a source of payment upon default. Moreover, in *Winnisimmet II,* the court emphasized the importance of the mortgagee obtaining possession in order to acquire a superior right to rents. 234 Mass. at 410, 125 N.E. at 600.[3] Nor is contrary authority contained in *Seppala & Aho Construction Co. v. Petersen,* 373 Mass. 316, 367 N.E.2d 613 (1977), where the court held that a mortgagee was not liable to an unsecured creditor of the mortgagor for negligent delay in foreclosing. In ruling that the mortgagee's possession was not effective to begin the three year process which is involved in foreclosure through possession, the court relied in part on the fact that the mortgagee had not taken possession of one of the buildings. Its comment that the mortgagee was receiving rents from that building through an assignment of rents rather than possession was certainly not a ruling on the effectiveness of such procedure if contested by the mortgagor. *See* 373 Mass. at 322, 367 N.E. 2d at 617.

We therefore conclude from Massachusetts common law as well as Massachusetts statutory law that a mortgagee must take possession of the property in order to have the right to collect rents even if he has a specific assignment of rents in the mortgage. We also find support in the rule to this effect which generally prevails throughout the county. We see no reason to believe that the Supreme Judicial Court of Massachusetts would not align itself with the vast majority of courts that have considered the matter.

---

**3.** *See also Winnisimmet Trust, Inc. v. Libby,* 247 Mass. 560, 142 N.E. 772 (1924) (*Winnisimmet III*). In what became a trilogy, the court in *Winnisimmet III* permitted the tenant to pay rent to the mortgagee in possession rather than the assignee when the mortgage finally demanded rents. Statements in this case also stress the importance of the mortgagee taking possession before demanding rents. 247 Mass. at 563, 142 N.E. at 773.

Rents, furthermore, do not spring from the ground. Real estate must be maintained and serviced to produce them, much as a contract must be performed to bring payment under it. We do not suggest that the Bank is improperly attempting to reap what it has not sown. A secured party is entitled to the fruits of its debtor's labors if those fruits constitute the collateral. But here the Bank wants a continuum of fruits while the Debtor remains in harness without sustenance. Equitable considerations hardly support such proprietorial serfdom.

Practical considerations point in the same direction. The Bank has been demanding rents while the Debtor remains in possession making the same demands of tenants. The tenants, understandably, have been confused, with some withholding payment altogether pending a resolution of the question. Such confusion does not aid a mortgagee, and it obviously can be the death knell for a mortgagor struggling to bring the mortgage current or to find new financing for a redemption.

As noted earlier, the Bank did not make a peaceful entry upon the property with two witnesses and record a certificate of entry pursuant to Mass.Gen.L. ch. 244, §§ 1, 2. Entry is frequently made in conjunction with a sale as somewhat of a belt and suspenders approach to foreclosure, even though it is clear from the wording of Mass.Gen.L. ch. 244, § 1 that possession after entry must continue for three years to be effective for foreclosure. *See* M. Park & D. Park, *Real Estate Law (28 Mass.Practice Series)* § 532 (1981). In denying the Bank its rent claim, we do not rely on the absence of this formalistic entry procedure. The only effective possession for these purposes is actual possession which would include operation and management. *See In re Genestri,* 12 F.2d 456, 457 (D.Mass.1926). Although continued receipt of rents following entry and recording of a certificate under the statute is considered *prima facie* evidence of possession (*see Joyner v. Lenox Savings Bank,* 322 Mass. 46, 76 N.E.2d 169 [1947]), here it is clear that the Debtor was and is in actual possession and managing the property, whether or not the Bank had made formal entry and filed the certificate. In *Joyner,* the mortgagee had been managing the property and collecting rents as an agent of the mortgagor before it sought to enforce its mortgage and assignment after default and collect rents for itself pending foreclosure.

In ruling against the mortgagee out of possession, the courts have at times referred to the mortgagee's rights as being "unperfected." *See, e.g., Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441 (5th Cir.1984); *Exchange National Bank of Chicago v. Gotta (In re Gotta),* 47 B.R. 198 (Bankr.W.D.Wis.1985). The Bank's rights are not unperfected, at least in the sense that security interests in personal property may remain unperfected under the Uniform Commercial Code. Under the U.C.C., a security interest comes into existence upon the occurrence of three events: (1) the execution of an adequate security agreement by the debtor; (2) the giving of value; and (3) acquisition of rights in the collateral by the debtor. Mass.Gen.L. ch. 106, § 9–203(1). A security interest is perfected under the U.C.C. by filing or possession. *Id.,* §§ 9–302 to 9–305. Because no security interest can exist until the debtor has rights in the collateral, a security interest in property acquired by the debtor after the signing of the security agreement comes into existence only when the debtor acquires the property, even though a previous filing has been made. Here the Bank, which has recorded the Mortgage and Lease Assignment, has rights in rents which are analogous to the rights in after-acquired property held by a secured creditor with a prior filing under the U.C.C. *See* § 9–204. The requirement of possession is somewhat similar to the U.C.C. requirement that a debtor acquire rights in the collateral. The Bank's security interest in rents, therefore, is more accurately described as inchoate rather than unperfected.

Our holding does not mean that the assignment of rents and leases accomplished no purpose for the Bank. Presumably some of the leases were entered into after

the Mortgage. When a lease is executed after a mortgage, the holder of the mortgage has an interest in the real estate which is superior to that of the lessee, because his mortgage came first. 4 *American Law of Property* §§ 16.91, 16.93 (1952). But because of the chronology, the mortgagee does not acquire the mortgagor's reversion in the lease; he is, therefore, not in privity of estate with the lessee. *Id.* § 16.91. This means that upon foreclosure, the mortgagee and the lessee are strangers to each other in a property sense. The mortgagee can thus evict the lessee. But the lessee, for the same reason, is free to leave without violating his lease, and the mortgagee is powerless to stop him. *Id.* Armed with an assignment of the lease, however, the mortgagee's rights are quite different. He then acquires the rights in the lease held by the mortgagor so that he may hold the lessee to his bargain. And because of his superior title, he may also evict the lessee. Thus he is in the enviable position of having the option to reject or affirm the lease. R. Swaim, *Crocker's Notes on Common Forms* § 594 (1955); 3 *Powell on Real Property* ¶ 454.1[3] (Rev.1987).

## VI  BANK'S RIGHTS AS A MATTER OF INTERPRETATION OF GOVERNING INSTRUMENTS

Even if Massachusetts law allowed a mortgagee who is not in possession to collect rents under an assignment authorizing collection out of possession, the governing instruments of assignment here do not contain this authorization.

■■■ The Lease Assignment states that upon default the Bank may "take possession of the property and have, hold, manage, lease and operate the same ... and may demand, collect, sue for and receive all rents and income, including those past due and unpaid...." This language obviously contemplates that the Bank will be collecting the rents while in possession, so that it is no authorization for what the Bank has been doing here. The clauses in the Mortgage on assignment of rents and leases are silent on possession. But two

factors create ambiguity concerning these clauses. First, the clauses appear in the Mortgage itself, a document which is expressly made the subject of various statutory foreclosure procedures that do not include collection of rents without possession. Second, the clauses in the Mortgage must be considered in conjunction with the related Lease Assignment, which was executed at the same time as the Mortgage as part of the same transaction, and which so clearly requires possession. *See Phoenix Spring Co. v. Harvard Brewing Co.*, 312 Mass. 501, 45 N.E.2d 473 (1942) (when several writings evidence a single contract between the parties, they will be read together in order to interpret the contract). Thus there is an ambiguity in the rent and lease assignment clauses of the Mortgage. Under basic rules of construction, that ambiguity is resolved against the Bank which drafted the Mortgage. *E.g., Merrimack Valley National Bank v. Baird*, 373 Mass. 721, 363 N.E.2d 688 (1977); *Bowser v. Chalifour*, 334 Mass. 348, 135 N.E.2d 643 (1956).

## VII  EFFECT OF THE FILING OF BANK'S MOTION

### A.  *Right of Sequestration*

■■■ In some states, a mortgagee not in possession is permitted to obtain rights under his assignment of rents by obtaining the appointment of a receiver to collect the rents and manage the property on the mortgagee's behalf. *See*, G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law* §§ 4.36, 4.37 (1979); Comment, *The Mortgagee's Right to Rents After Default*, 50 Yale L.J. 1424, 1438–45 (1941). There are also some states which permit the mortgagee to file a motion for "impounding" or sequestration of rents. *See, e.g., Taylor v. Brennan*, 621 S.W.2d 592 (Tex.1981). There is no such procedure in Massachusetts. Thus the Bank's motion, which is designated in part as one for "Sequestration of Rents" (but which merely asks for permission to collect all rents), has no counterpart in state practice. The only statutorily sanctioned method to obtain undisputed control over the property is to

take possession by entry under Mass.Gen. L. ch. 244, §§ 1, 2, or by a judgment for possession under Mass.Gen.L. ch. 244, §§ 3–8.

In states that do have procedures for rent sequestration or mortgagee receiverships, some federal courts supervising a bankruptcy proceeding have spoken of placing the mortgagee in the same position that he would have been in outside of bankruptcy upon his filing the appropriate motion for sequestration or receivership with the bankruptcy court. In the appeals court opinion in the *Butner* case, for example, the court spoke approvingly of granting the mortgagee the right to rents if he took action in the bankruptcy court which was "equivalent" to the action he would have to take under state law to obtain the rents. The actions deemed equivalent by the appeals court (but not passed upon by the Supreme Court) were: (1) obtaining the bankruptcy court's consent to foreclose; (2) petitioning the bankruptcy court for sequestration of rents; and (3) obtaining the appointment of a receiver. *See Golden Enterprises, Inc. v. United States (In re Golden Enterprises, Inc.)*, 566 F.2d 1207, 1210 (4th Cir.1977) (holding bankruptcy trustee entitled to rents because mortgagee took no action during bankruptcy proceeding equivalent to action under state law necessary to activate its right to rents); *see also* 4A *Collier on Bankruptcy* ¶ 70.16 (14th ed. 1978). This theory appears to have developed under the old Act before the day of the automatic stay. It would seem to be inconsistent with the automatic stay under the Bankruptcy Code, which may only be terminated by the mortgagee for the reasons set forth in § 362, the usual reason being for cause, including lack of adequate protection. The filing of a pleading is not cause. *But see Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.)*, 723 F.2d 441, 446 (5th Cir.1984); *Roosevelt Federal Savings & Loan Association v. Mottaz (In re Southern Gardens, Inc.)*, 39 B.R. 671 (Bankr.S.D.Ill.1982) (permitting post petition perfection in rents by methods suggested in *Golden Enterprises* ).

The preferable position on the matter of state law equivalence is that taken by the courts who look to what the mortgagee's position was at the commencement of the bankruptcy case. If the mortgagee was not then in possession, either actually or constructively through a receiver, these courts deny him the right to rents. *See, e.g., United States v. Buckley (In re Buckley)*, 73 B.R. 746 (D.S.D.1987); *Waldron v. Northwest Acceptance Corp. (In re Johnson)*, 62 B.R. 24 (Bankr. 9th Cir.1986); *In re Hamlin's Landing Joint Venture*, 77 B.R. 916, 920 (Bankr.M.D.Fla.1987); *In re Mahloch*, 62 B.R. 744 (Bankr.D.Neb.1986); *Exchange National Bank of Chicago v. Gotta (In re Gotta)*, 47 B.R. 198 (Bankr.W. D.Wis.1985). Thus even if Massachusetts had a procedure for sequestration of rents or for appointment of a receiver, the mere filing of the Bank's present motion would not activate any right to rents.

## B. *Section 546(b)*

Section 546(b) of the Bankruptcy Code provides:

(b) The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

A few courts have divined from this language a relevance to the present question as the result of a misunderstanding of the concept of perfection. They regard the action which a particular state requires the mortgagee to take to acquire an interest in rents as an act of perfection under § 546(b). Thus a motion filed by the mortgagee in the bankruptcy court asking for an order requiring sequestration of rents

has been considered an act of perfection under § 546(b). *See, e.g., Casbeer v. State Federal Savings & Loan Association (In re Casbeer),* 793 F.2d 1436, 1442–43 (5th Cir.1986); *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441, 447 (5th Cir.1984); *Consolidated Capital Income Trust v. Colter, Inc. (In re Colter, Inc.),* 47 B.R. 1008 (D.Colo.1985); *Federal Deposit Insurance Corp. v. Lancaster (In re Sampson),* 57 B.R. 304 (Bankr.E.D.Tenn.1986).

Even if Massachusetts had the appropriate procedure, § 546(b) would have no such sweep. The statute refers to a concept of perfection such as that employed in the Uniform Commercial Code. H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5872, 6327. That concept refers to action designed to give notice to third parties of the claimed security interest, either by filing or through possession. Here such notice has already been given; the Bank has recorded both the Mortgage and the Lease Assignment. The act of possession we require is part of the process of completion of the security interest rather than perfection. The issue here is the present nature of the Bank's interest in current rents. Section 546(b) is designed to affirm the validity of statutes such as § 9–301(2) of the U.C.C., which permits a purchase money security interest to be perfected within ten days after the debtor receives possession of the collateral. H.R. Rep. No. 595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978). U.C.C. § 9–301(2) expresses a strong policy in favor of a secured party who provides the funds for a debtor to purchase the collateral. Mechanics liens are also favored interests that are given retroactive effect. *See* Mass.Gen.L. ch. 254, § 1 *et seq.* If the particular statute has no retroactive effect, § 546(b) does not apply. *Exchange National Bank of Chicago v. Gotta (In re Gotta),* 47 B.R. 198, 202 (Bankr.W.D.Wisc.1985). Decisions such as the Fifth Circuit's decisions in *Casbeer* and *Wolters Village, supra,* fail to limit the application of § 546(b) to those rare statutes which give retroactive priority effect to a secured party's filing (or other action) against an innocent third party who has previously acquired rights in the collateral. *Casbeer* refused to give the mortgagee retroactive rights in rents, and yet purported to be acting under § 546(b). Regardless or whether or not one may label the realization of the right to collect rents pursuant to an assignment "perfection" under § 546(b), such realization has no retroactive effect. *Exchange National Bank of Chicago v. Gotta (In re Gotta),* supra; *see Woodworth v. Blair,* 112 U.S. 8, 5 S.Ct. 6, 28 L.Ed. 615 (1884).

Section 546(b), moreover, expressly limits its application to the rights and powers of a trustee under § 544, 545 and 549. We are here primarily concerned with § 552(b), which deals with the rights of the trustee (and the debtor in possession) to rents received during the bankruptcy proceeding. Thus reliance upon § 546(b) is misplaced. L. Cherkis & L. King, *Collier Real Estate Transactions and The Bankruptcy Code* ¶ 2.03[1] (1987).

## VIII CONCLUSION

### A. *Adequate Protection*

■ We therefore conclude that the Bank is not entitled to adequate protection. We do so because it has only an inchoate security interest in the rents being collected as the result of not having taken possession of the mortgaged property. In so grounding our decision, we do not mean to imply that the Bank would necessarily be entitled to any payment of rents (or their value as adequate protection) even if it had a choate security interest. It is now settled by the Supreme Court's decision in *Timbers, supra,* that adequate protection of a security interest consists of protection against decline in the value of the security interest rather than protection against loss of the opportunity of present realization on the collateral. When the collateral consists of the entire interest in real estate, including the right to rents, the right to rents should not be considered in isolation from the entire property interest. To the extent that the debtor applies rental income to the

operation and maintenance of the property (which the Debtor has been doing here), the mortgagee may be considered to be adequately protected. *Chaussee v. Morning Star Ranch Resorts Co. (In re Morning Star Ranch Resorts),* 64 B.R. 818, 822–23 (Bankr.D.Colo.1986); *Hartigan v. Pine Lake Village Apartment Co. (In re Pine Lake Village Apartment Co.),* 16 B.R. 750, 756–57 (Bankr.S.D.N.Y.1982); *See also In re Gaslight Village, Inc.,* 6 B.R. 871 (Bankr.D.Conn.1980) (suggesting that such issues might be considered in a hearing on adequate protection).

Of course, if rental income is declining, then the mortgagee's interest in rents may be prejudiced even if that income is being properly applied. The evidence presented at the prior hearing was that rental income was not declining. This was an important factor in the Court's finding at that hearing that the value of the real estate was not declining. A somewhat similar situation would seem to be presented where a lender has a lien upon the proceeds of inventory and accounts receivable of an operating debtor. If the proceeds stream is likely to remain stable through the collection of new accounts receivable or the sale of new inventory, adequate protection is often ensured by a replacement lien on post-petition accounts and inventory and their proceeds and by some provision for monitoring the use of proceeds. *E.g., In re Karl Neise, Inc.,* 16 B.R. 600 (Bankr.S.D. Fla.1981). In contrast, there appears to be a vast difference between a mortgagee's cash collateral security interest in rents and a secured party's cash collateral security interest in, for example, a certificate of deposit in a bank, the dissipation of which may well damage the secured party on a dollar-for-dollar basis.

Section 506(c)[4] of the Bankruptcy Code may also have some bearing on a mortgagee's right to adequate protection for his security interest in rents, but we need not pass on that question. *See* 3 *Collier on Bankruptcy* ¶ 506.06 (15th ed. 1987) (dis-cussing factors to be considered in applying § 506(c)).

We make these observations only to put our ruling on the cash collateral question in context. If the Bank had a choate security interest in the rents, its rights to adequate protection would require a more refined analysis than is appropriate here.

**B. *Rents Collected by Bank***

■ We also conclude, because the Bank's interest in rents is inchoate, that the Bank had no right to collect rents and is therefore not entitled to retain them. Its failure to exercise its right to possess the mortgaged property gives the Debtor superior rights in the rents, even if we consider the Debtor's rights without regard to the Debtor's strong arm powers under 11 U.S.C. § 544(a). What the Bank has sought to do here is analogous to a lender holding a security interest in contract rights and accounts who attempts to collect under contracts before they ripen into accounts. The Bank's collection of rents after this Chapter 11 case began, moreover, was a violation of the automatic stay. 11 U.S.C. § 362(a)(4).

A separate order has issued requiring the Bank to turn over its collected rents to Smith as trustee for the Debtor and to notify all tenants that future rents are to be paid to Smith.

### ORDER

In accordance with the Findings of Fact and Rulings of Law issued this same day in the above-captioned case, it is hereby ORDERED that:

1) The motion of First Safety Fund National Bank (the "Bank") for adequate protection and sequestration of rents is DENIED;

2) The Bank shall forthwith notify all tenants occupying the premises located at 465 Main Street, Fitchburg, Massachusetts to pay all presently accrued and future

---

**4.** 11 U.S.C. § 506(c) provides:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

rents to Marvin P. Smith, Trustee of Pritchard Plaza Realty Trust ("Smith"); and

3) The Bank shall forthwith turn over to Smith all rents collected from tenants from July 1, 1987 to the date of compliance with this Order, along with copies of its records detailing the Bank's collection of rents in that time period.